798 So.2d 940 (2001)
Elena Ledo BENNETT and Micah Keith Bennett,
v.
Dr. Robert KRUPKIN and St. Paul Fire and Marine Insurance Company.
No. 2001-C-0209.
Supreme Court of Louisiana.
October 16, 2001.
Larry M. Roedel, David A. Woolridge, Jr., Roedel, Parsons, Koch, Frost, Balhoff & McCollister, Baton Rouge, Counsel for Applicant.
Margaret Bradley, New Orleans, Steven C. Thompson, David A. Thomas, Moore, *941 Walters & Thompson, Baton Rouge; Donald S. Zuber, Seale, Smith, Zuber & Barnette, Baton Rouge, Counsel for Respondent.
VICTORY, J.[*]
We granted a writ to determine whether the Louisiana Patient's Compensation Fund Oversight Board (the "Board") has standing to appeal a judgment of the trial court granting a doctor's exception of prematurity, where the Board claims the doctor is not a qualified health care provider under the Medical Malpractice Act, La. R.S. 40:1299.41, et seq. (the "MMA"). After reviewing the record and the applicable law, we find that the Board has standing to appeal the trial court's judgment, and we remand the case to the First Circuit to review the trial court's judgment granting the exception of prematurity on the merits.

FACTS AND PROCEDURAL HISTORY
St. Paul Fire & Marine Insurance Company ("St. Paul") issued a "claims made" policy of medical malpractice to Robert H. Krupkin, M.D. ("Dr. Krupkin") with a policy period of January 15, 1995 through January 15, 1996. On January 15, 1996, the policy expired but was renewed and reissued with a policy period of January 15, 1996 through January 15, 1997. On January 15, 1997, the policy expired and Dr. Krupkin chose not to renew it, nor did he purchase an extended reporting endorsement/tail coverage from St. Paul.
Elena Ledo Bennett was a patient of Dr. Krupkin, a breast cancer specialist, beginning in 1988. She last saw Dr. Krupkin on October 6, 1995, when she questioned Dr. Krupkin about a mass in her right breast and he allegedly told her that the mass was merely a fibroadenoma and that no further tests were necessary. In September of 1996, when she experienced pain and other changes in her right breast, she contacted Dr. Krupkin's office and was told that he had retired. On October 25, 1996, Mrs. Bennett learned that she had Stage IV inoperable breast cancer which had spread to her lymph nodes and liver, and from which she died on August 8, 1997.
On March 20, 1997, the Bennetts filed a medical malpractice complaint with the Board. On April 1, 1997, the Board notified the Bennetts and Dr. Krupkin that their records indicated that he was not a qualified healthcare provider under the MMA based on the fact that Dr. Krupkin had not purchased an extended reporting endorsement/tail from St. Paul that would have provided underlying coverage on March 20, 1997, the time the claim was filed with the Board.[1] The Board subsequently learned that a surcharge had not been paid to the Fund by, or on behalf of, Dr. Krupkin for the date the claim was filed, as required by La. R.S. 40:1299.42(A).[2]
Accordingly, on April 17, 1997, the Bennetts filed their petition in the 19th *942 Judicial District Court against Dr. Krupkin and St. Paul, alleging the malpractice of Dr. Krupkin.[3] On January 9, 1998, Dr. Krupkin filed an exception of prematurity, contending that he was a qualified health care provider under the MMA, and that the plaintiffs were required to first present their claim to a medical review panel. On April 6, 1998, the Board filed a petition of intervention seeking a decision from the trial court as to whether Dr. Krupkin was covered by the MMA for the claims of the Bennetts, and claiming Dr. Krupkin was not covered because there was no underlying coverage for the alleged malpractice as he had not purchased an extended reporting endorsement/tail coverage from St. Paul. On April 7, 1998, the trial court signed an Order granting the intervention by the Board. Dr. Krupkin and St. Paul both filed answers to the petition on the merits, but did not object to the intervention itself.
On March 31, 1999, the Bennetts filed a motion for summary judgment claiming that the St. Paul policy provided coverage under Hedgepeth v. Guerin, 96-1044 (La. App. 1 Cir. 3/27/97), 691 So.2d 1355, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983.[4] On April 9, 1999, the Board filed a motion for summary judgment, claiming that Dr. Krupkin was not a qualified health care provider under the MMA because on the date the complaint was filed with the Board, March 20, 1997, the proper surcharge had not been paid by or on behalf of Dr. Krupkin, as required by La. R.S. 40:1299.42(A).
*943 On August 2, 1999, the trial court heard oral argument on the Board's motion for summary judgment, the Bennett's motion for summary judgment, and Dr. Krupkin's exception of prematurity. At the conclusion of the hearing, the trial court denied the Board's motion for summary judgment, finding that Dr. Krupkin was a qualified health care provider with St. Paul's policy providing the underlying coverage under Hedgepeth. The trial court granted Dr. Krupkin's exception of prematurity and dismissed Dr. Krupkin, without prejudice, finding that Dr. Krupkin was a qualified healthcare provider under the MMA, and "reserving the plaintiffs right to rename Dr. Krupkin as a defendant in this suit upon completion of the Medical Review Panel proceedings in accordance with the Louisiana Medical Malpractice Act of 1975 (La. R.S. 40:1299.41, et seq.)." Finally, the trial court granted final partial summary judgment in favor of the Bennetts, ruling that the St. Paul policy provides coverage to Dr. Krupkin in favor of the Bennetts for the alleged malpractice. The court designated this as a final judgment, finding that:
... delay will do harm to the parties insofar as the coverage issue affects the remaining procedural aspects of the case, including whether or not Dr. Krupkin is a qualified health care provider such as to cause plaintiffs to go through and comply with the provisions of La. R.S. 40:1299.41 et seq. And insofar as the parties have delayed litigating the merits of the case until the coverage issues are established.
On September 14, 1999, the Board filed a motion for new trial on the grounds that the above judgments, granting the Bennetts' motion for summary judgment against St. Paul, denying the Board's motion for summary judgment and granting Dr. Krupkin's exception of prematurity, were contrary to the law and the evidence. The Bennetts opposed the motion, for the first time arguing that the Board lacked standing to raise these issues. After a hearing on October 18, 1999, the trial court denied the Board's motion for new trial. On November 3, 1999 the Board took a devolutive appeal from the judgments sustaining the exception of prematurity and denying the new trial.
On December 22, 2000, the First Circuit dismissed the Board's appeal, stating that it was unable to find any statutory or jurisprudential basis for allowing the Board to appeal either the judgment granting the exception of prematurity or the denial of the motion for new trial on the judgment. Bennett v. Krupkin, 00-0023 (La.App. 1 Cir. 1/31/01), 778 So.2d 101 (unpublished opinion).[5] We granted the Board's writ to determine whether the Board may appeal a trial court's ruling granting an exception of prematurity filed by a healthcare provider when the healthcare provider and the plaintiff have not challenged the judgment granting the exception of prematurity. Bennett v. Krupkin, 01-0209 (La.3/30/01), 788 So.2d 436.

DISCUSSION
Under the Medical Malpractice Act, the Board is responsible, and has full authority, *944 for the management and defense of the Fund. La. R.S. 40:1299.44(A)(5)(b) provides:
The functions of collecting, administering, and protecting the fund, including all matters relating to establishing reserves, the evaluating and settlement of claims, and relating to the defense of the fund, shall be carried out by the board.
La. R.S. 40:1299.44(D)(2)(a) provides:
The board shall be responsible, and have full authority under law, for the management, administration, operation, and defense of the fund in accordance with the provisions of this Part.
Finally, La. R.S. 40:1299.44(D)(2)(b)(x) expressly grants the Board the authority to:
Defend the fund from all claims due wholly or in part to the negligence or liability of a non-covered health care provider or a product manufacturer, or both, regardless of whether a covered health care provider has settled or paid its statutory maximum, or has been adjudged liable or negligent. (Emphasis added.)
The Board argues that, as the entity statutorily responsible for defending the Fund, it has an interest in a judicial determination of whether or not Dr. Krupkin is a qualified health care provider under the MMA, and that the court of appeal erred in dismissing the appeal of the judgment granting Dr. Krupkin's exception of prematurity, in direct contravention of Louisiana Code of Civil Procedure Articles 1091, 2083 and 2086. We agree.
Article 1091 provides that "[a] third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by: ... (3) Opposing both plaintiff and defendant." La. C.C.P. art. 1091. Article 2086 provides that "[a] person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken." La. C.C.P. art. 2086. As a party who could have, and did, intervene in the trial court, the Board has a right to appeal under La. C.C.P. art. 2086. Finally, Article 2083 provides in part that "[a]n appeal may be taken from a final judgment rendered in causes in which appeals are given by law...." La. C.C.P. art. 2083. The judgment granting Dr. Krupkin's exception of prematurity was a "final judgment." Further, La. R.S. 40:1299.44(D)(2)(b)(x) specifically gives the Board the authority to defend the Fund from all claims due to the negligence of a non-covered health care provider, which, in our view, includes opposing an exception of prematurity filed by a doctor on the grounds that the doctor is a "non-covered health care provider."
The Board clearly has an interest in this action to claim that Dr. Krupkin is not a qualified health care provider, in that, if Dr. Krupkin is found to be a qualified health care provider, the Board could be liable for the amount of any judgment over $100,000.00. In fact, the Board is statutorily required to notify the claimant within 15 days of the receipt of the claim whether or not the named health care provider is qualified under the MMA. La. R.S. 40:1299.47(A)(3). Accordingly, the Board notified the plaintiffs and Dr. Krupkin that he was not a qualified healthcare provider based on their records and the plaintiffs then filed their suit in the district court. The issue of whether Dr. Krupkin was qualified arose again when Dr. Krupkin filed an exception of prematurity claiming that he was qualified and that the plaintiffs had to proceed under the MMA, i.e., to a medical review panel. Although the trial court ultimately found that the St. Paul policy provided underlying coverage to Dr. *945 Krupkin for the claim made by the Bennetts,[6] which would satisfy the first prong of La. R.S. 40:1299.42(A), the Board also argues that Dr. Krupkin has not satisfied the second prong of La. R.S. 40:1299.42(A), which requires that to be a qualified health care provider, the health care provider must pay a surcharge in accordance with La. R.S. 40:1299.44. The Board asserts that the required surcharge was not paid on behalf of Dr. Krupkin. The Board argues that whether the St. Paul policy provides underlying coverage under Hedgepeth and whether Dr. Krupkin paid the applicable surcharges for Patient's Compensation Fund coverage on the date that the claim was filed are separate issues. If it is not allowed to appeal the trial court's grant of the exception of prematurity in favor of Dr. Krupkin finding that he is a qualified health care provider, the Board will be prevented from undertaking its responsibility to defend the Fund and will be subject to exposure for the claims involved in this suit.
In arguing that the Board has no standing, Dr. Krupkin and the Bennetts rely on jurisprudence that has held that, in an action under the MMA, unless there is a judgment or a settlement pursuant to La. R.S. 40:1299.44(C)(5)[7], the Board has no standing to intervene.[8] However, in those *946 cases, there was never any dispute that the health care providers involved in the suits were qualified health care providers, and the issues involved the Board's intervention rights in suits under the MMA against qualified health care providers. To the contrary, in this case and at this stage, the contested issue is whether or not this case properly falls under the MMA at all, i.e., whether Dr. Krupkin met the requirements of the MMA to be deemed a qualified healthcare provider entitled to the benefits of the MMA. Nothing in the jurisprudence suggests that the Board has no right to argue its position that the health care provider is not a qualified health care provider under the MMA, even in the early stages of this type of litigation. In fact, in the only reported case where the Board has intervened and appealed an exception of prematurity granted in favor of a doctor, asserting that the doctor was not a qualified health care provider for failure to pay the required the surcharge, the court allowed the appeal and reviewed the merits with no discussion of the Board's standing to file the appeal. Brown v. St. Paul Fire & Marine Ins. Co., 31,777 (La.App. 2 Cir. 3/31/99), 731 So.2d 953, writ denied, 99-1211 (La.6/4/99), 744 So.2d 634.

CONCLUSION
The Board has asserted that Dr. Krupkin is not a qualified health care provider on numerous occasions, i.e., after the Bennetts filed their medical malpractice complaint with the Board, in its petition of intervention seeking a decision as to whether Dr. Krupkin was covered by the MMA, in its motion for summary judgment, in its opposition to Dr. Krupkin's exception of prematurity, in its Motion for New Trial on Dr. Krupkin's exception of prematurity, and in its appeal of that judgment. The Board is clearly an interested party entitled to intervene and appeal under the intervention statutes, and, in fact, has the duty to defend the Fund under La. R.S. 40:1299.44(A)(5)(b), La. R.S. 40:1299.44(D)(2)(a), and La. R.S. 40:1299.44(D)(2)(b)(x). This is particularly evident here, where the Board is the only party or entity claiming that the health care provider is not a qualified health care provider entitled to coverage under the MMA. Accordingly, we find that the Board has standing to appeal the trial court's judgment granting Dr. Krupkin's exception of prematurity.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and the matter is remanded to the court of appeal to consider the merits of Board's appeal of the judgment granting Dr. Krupkin's exception of prematurity.
REVERSED AND REMANDED.
KNOLL, J., concurs and assigns reasons.
KNOLL, Justice, concurring.
I concur specifically to emphasize that our determination today represents the first time that the Louisiana Patient's Compensation Fund Oversight Board (the "Board") has asked us to determine if it has standing to appeal a decision which directly affects the threshold issue of the applicability of the Medical Malpractice Act (the "MMA"). Today's decision should not be seen as a retreat from or dilution of the well-settled jurisprudence compiled in note 8 in the majority opinion that recognizes *947 that the Board has no standing to involve itself in a medical malpractice action against a qualified healthcare provider relating to issues of liability unless there is a judgment or settlement pursuant to the provisions of LA.REV.STAT. ANN. § 40:1299.44(C)(5).
To the contrary, our decision recognizes that the Board has standing under the present facts to determine the threshold issue of whether the healthcare provider has met the requirements of the MMA to be Board qualified. Because there is a question of the applicability of the MMA implied in the trial court's grant of Dr. Krupkin's dilatory exception of prematurity, the need to avoid the myriad problems which may arise if the MMA is misapplied calls for our recognition of the Board's standing under these particular facts.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] La. R.S. 40:1299.47(A)(3) provides:

It shall be the duty of the board within 15 days of the receipt of the claim to:
(a) Confirm to the claimant that the filing has been officially received and whether or not the named defendant or defendants have qualified under this Part.
[2] La. R.S. 40:1299.42(A) sets forth the basic requirements for qualification under the Medical Malpractice Act. That statute provides as follows:

To be qualified under provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
La. R.S. 40:1299.42(E), relating to proof of financial responsibility, provides:
Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider.
La. R.S. 40:1299.44, relating to the Patient's Compensation Fund, provides in pertinent part as follows:
(2)(a) In order to provide moneys for the fund, an annual surcharge shall be levied on all health care providers in Louisiana qualified under the provisions of this Part.
(b) The surcharge shall be determined by the Louisiana Insurance Rating Commission based upon actuarial principles and in accordance with an application for rates or rate charges, or both, filed by the Patient's Compensation Fund Oversight Board, established and authorized pursuant to Subsection D of this Section.
(c) The application for rate changes filed by the board shall be submitted to the Louisiana Insurance Rating Commission at least annually on the basis of an annual actuarial study of the patient's compensation fund.
(d) The surcharge shall be collected on the same basis as premiums by each insurer, the risk manager, and surplus line agent.
(e) The board shall collect the surcharge from health care providers qualified as self-insureds.
. . .
(3)(a) Such surcharge shall be due and payable to the patient's compensation fund within forty-five days after the premiums for malpractice liability insurance have been received by the agent of the insurer, risk manager, or surplus line agent from the health care provider in Louisiana.
[3] See La. R.S. 40:1299.41(1) ("A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part").
[4] In Hedgepeth, the First Circuit found that a policy provision in a claims made policy which requires that a claim be made within the policy period is without effect if it reduces the prescriptive period against the insurer to less than one year in violation of La. R.S. 22:629.
[5] Also on December 22, 2000, the First Circuit affirmed the final partial summary judgment of the trial court in favor of the Bennetts, holding that under Hedgepeth, the St. Paul policy provided coverage for the alleged acts of malpractice. Bennett v. Krupkin, 99-2702 (La.App. 1 Cir. 12/22/00), 779 So.2d 923. This Court denied St. Paul's writ application. Bennett v. Krupkin, 01-0193 (La.3/30/01), 788 So.2d 1190. Therefore, the judgment that Dr. Krupkin was covered by St. Paul's policy at the time the claim was made is a final judgment.
[6] As explained in footnote 5, this judgment is a final judgment.
[7] La. R.S. 40:1299.44(C)(5), provides in pertinent part:

In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars. (Emphasis added)
[8] See Williams v. Kushner where this Court, considering the Board's intervention rights under La. C.C.P. art. 1091(2), held that under the MMA:

The status of the Fund after a settlement between the claimant and the health care provider is more in the nature of a statutory intervenor rather than a party defendant. The Fund is similar to an intervenor in that it is a third person who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of $100,000 are payable from the Fund. Just as an intervenor may do, the Fund may put on evidence and unite with the defendant in resisting the claimant's demand. Compare La. R.S. 40:1299.44(C)(3) & (C)(5) with La.Code Civ. P. art. 1091(2).
449 So.2d 455, 458 n. 16 (La.1984); Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676, 681 (La.1985) (citing La. C.C.P. arts. 1091 and 2086 and holding that in a suit under the MMA "after a judgment is rendered in a suit between the claimant and the health care provider awarding damages against the health care provider in excess of one hundred thousand dollars, the commissioner and the fund have an interest in the action for the purpose of appealing the excess judgment against the fund"); Potier v. Commissioner of Ins., 98-1063 (La.App. 1 Cir. 11/5/99), 753 So.2d 305 (refusing to allow the Board to undertake the defense costs of a qualified health care provider whose insurer was in liquidation, holding that under the MMA, "the PCF's statutory responsibility is not triggered until there is a settlement as to liability by, or on behalf of, the health care provider and the claimant seeks an additional amount in excess thereof from the PCF for a complete and final release."); Zumo v. Our Lady of the Lake Reg'l Med. Ctr., 96-0492 (La.App. 1 Cir. 4/1/99), 730 So.2d 1080, writ denied, 99-1194 (La.6/18/99), 745 So.2d 24 (holding that while the Fund has the right to intervene in a suit under the MMA and appeal a judgment, it has no right to intervene to file a motion for new trial after a judgment has been rendered); Dodson v. Community Blood Ctr., 633 So.2d 252 (La.App. 1 Cir.1993), writ denied, 634 So.2d 851 (La.1994) (holding that, similar to a statutory intervenor, the PCF must take the proceedings as it finds them when it enters the MMA action and may not object to the plaintiffs' use of discovery depositions at trial); Payne v. New Orleans General Hosp., 611 So.2d 777 (La.App. 4 Cir.1992) (holding that the Fund had no standing to intervene in a suit under the MMA in order to "gather information necessary to bring claims on behalf of the Fund which are unrelated to the issue of the liability of the health care provider" prior to a settlement or judgment in excess of $100,000).