898 So.2d 360 (2005)
Donald E. O'BRIEN and Carol O'Brien
v.
Dr. Akbar RIZVI, Dr. Arthur Carl Plautz, Jr., St. Paul Fire & Marine Insurance Company and CHG Companies, Inc. (Formerly CompHealth, Inc.) d/b/a CompHealth.
Nos. 2004-C-2252, 2004-C-2257.
Supreme Court of Louisiana.
April 12, 2005.
*361 Beard & Sutherland, Frederick Haydel Sutherland, Shreveport, Edward P. Sutherland, Baton Rouge, Counsel for Applicant (No. 2004-C-2252).
Percy, Smith & Foote, LLP, Elizabeth Erny Foote, Alexandria, Susan Claire Segura, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Larry Michael Roedel, David Alva Woolridge, Jr., Baton Rouge, Counsel for Respondent (No. 2004-C-2252).
Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Larry Michael Roedel, David Alva Woolridge, Jr., Baton Rouge, Counsel for Applicant (No. 2004-C-2257).
Beard & Sutherland, Frederick Haydel Sutherland, Shreveport, Edward P. Sutherland, Baton Rouge, Percy, Smith & Foote, LLP, Elizabeth Erny Foote, Alexandria, Susan Claire Segura, Counsel for Respondent (No. 2004-C-2257).
KNOLL, Justice.
In this medical malpractice case we granted certiorari to consider two issues. The first issue is whether the court of appeal erred in denying the Louisiana Patient's Compensation Fund Oversight Board's (hereinafter "Board") petition of intervention on plaintiffs' request for rehearing. The second issue is whether the court of appeal erred in ruling the defendants were qualified health care providers (QHCP) under Louisiana's Medical Malpractice Act, La.Rev.Stat. Ann. 40:1299.41 et seq. (hereinafter "Act"), thereby reversing the trial court's denial of the defendants' dilatory exception of prematurity. After careful review of the record, the applicable jurisprudence and the plain language of the Act, we find the Board should have been allowed to intervene in the petition for rehearing, and further find the defendants were not qualified health care providers entitled to the protections afforded under the Act.

FACTS AND PROCEDURAL HISTORY
CompHealth is a staffing company that places locum tenens physicians in hospital and clinic positions for short-term assignments. CompHealth placed Dr. Arthur Plautz, Jr. at the Veterans Administration Hospital (VA Hospital) in Pineville, Louisiana. CompHealth sought qualification with the Louisiana Patient's Compensation Fund (hereinafter PCF) by purchasing a policy of professional liability insurance through St. Paul Fire and Marine Insurance Company (St. Paul) on a claims-made basis.[1] The policy covered *362 claims that were made from February 1, 2001 to February 1, 2002. The policy was issued on a full-time equivalency (FTE) basis, which means the premium is based on the estimated number of physician days worked by CompHealth's locum tenens physicians in Louisiana. The insured is required at the end of the policy year to audit the actual number of hours worked by the locum tenens physicians, report that amount to the insurance company, and pay an additional premium to the insurer as well as an additional surcharge to the PCF.
In February 2001, when CompHealth obtained the claims-made policy, CompHealth also submitted a check dated February 23, 2001 in the amount of $7,529 for a surcharge to the PCF. On March 8, 2001, the PCF issued CompHealth a certificate of enrollment with effective dates of February 23, 2001 to February 1, 2002.
In February 2002, CompHealth submitted a revised certificate of insurance to the PCF for the period of February 1, 2001 to February 1, 2002, reflecting the actual days worked by CompHealth's physicians in Louisiana. The revised surcharge amount due to the PCF was $16,104. CompHealth submitted the additional surcharge due of $8,575. At the same time CompHealth purchased an unlimited Extended Reporting Endorsement, or "tail" coverage, with St. Paul, which provided coverage for any alleged acts of malpractice that occurred between February 1, 2001 and February 1, 2002, even if the claim was made after February 1, 2002. CompHealth submitted to the PCF an additional surcharge on the tail coverage in the amount of $28,756.
In March, 2002, the PCF informed CompHealth that its physicians who were assigned to governmental agencies or who were not licensed in Louisiana could not participate in the PCF. This information came about by CompHealth's inquiry to the PCF, wherein CompHealth informed the PCF that assignments to VA Hospitals and "Indian Health" do not require the physicians to have a Louisiana license. CompHealth then asked the PCF if a doctor does not have a Louisiana license, can the doctor participate in the PCF? The PCF replied a health care provider must have a Louisiana license to participate in the PCF. CompHealth did not protest this response. CompHealth informed the PCF that it had reviewed the physician days worked in Louisiana, subtracting from those days the "government days where [the physicians] are not required to have a L[ouisiana] license", and requested a refund of the surcharge paid to the PCF in the amount of $19,850 for physicians who did not qualify. CompHealth received part of the refund on May 9, 2002 and the remainder on September 30, 2002.
On December 11, 2002, Donald O'Brien filed a claim with the Commissioner of Administration and the Board against Dr. Plautz and Dr. Akbar Rizvi for alleged acts of malpractice committed by Dr. Plautz, a CompHealth locum tenens physician and Dr. Rizvi, an employee of the VA Hospital. In a letter dated January 9, 2003, the PCF informed the plaintiff that none of the defendants have coverage in the PCF. On December 18, 2002, plaintiff filed suit in state court against Dr. Rizvi and Dr. Plautz, alleging malpractice arising out of medical treatment received at the VA Hospital from April 18, 2001 through January 16, 2002. The plaintiff amended the suit to add as defendants CompHealth, as Dr. Plautz's employer, and St. Paul, as the liability insurer of CompHealth and/or Dr. Plautz.[2]
*363 Defendants, Dr. Plautz, CompHealth and St. Paul, filed a dilatory exception of prematurity. The trial court denied this exception, ruling that the defendants were not qualified under the Act, therefore the plaintiffs did not have to proceed through a medical review panel before bringing suit in state court.
The court of appeal reversed. The court found that Dr. Plautz and CompHealth satisfied both prongs of La.Rev.Stat. Ann. 40:1299.42 by purchasing tail coverage which covered the claim filed on December 18, 2002, and by paying the surcharge to the PCF. Relying upon Bennett v. Krupkin, 2000-23 (La.App. 1 Cir. 3/28/02), 814 So.2d 681,[3] the court held "once a health care provider has qualified under the [MMA], the health care provider's qualification under the Act is concurrent with the coverage under the underlying insurance policy, i.e., qualification takes effect and follows the same form as the policy of insurance." O'Brien v. Rizvi, 04-086, p. 7 (La.App. 3 Cir. 6/9/04), 877 So.2d 150, 155, (citing Bennett, at p. 8, 814 So.2d at 686-687). The PCF's retroactive disqualification of CompHealth and Dr. Plautz after it had issued a certificate of enrollment and after CompHealth had paid the surcharge was found not to affect CompHealth's and Dr. Plautz's qualification. Id. at p. 8, 877 So.2d at 155.
The plaintiffs filed an application for re-hearing, and the Board filed a petition to intervene. The court of appeal denied both. We granted writs to review the appellate court's decision. O'Brien v. Rizvi, 04-2252, 04-2257 (La.12/10/04), 888 So.2d 820.

DISCUSSION
We begin by noting that at oral argument, the parties informed us that the day before, the plaintiffs had settled their claims with Dr. Plautz, St. Paul and CompHealth. The plaintiffs specifically reserved their right to proceed against the PCF. Because the PCF's liability depends on whether the physician is a QHCP, and the plaintiffs have not released the PCF, this remains a justiciable controversy.[4] Therefore we will review the correctness, vel non, of the appellate court's decision rejecting the Board's petition to intervene and its decision that Dr. Plautz and CompHealth were qualified health care providers afforded the benefits of the Act.

Board's Standing to Intervene
In Bennett v. Krupkin, 01-0209 (La.10/16/01), 798 So.2d 940, we addressed the issue of whether the Board has standing to appeal a trial court judgment granting a doctor's exception of prematurity, where the Board claims the doctor is not a QHCP under the Act. We noted that under the Act, the Board is responsible, and has full authority for the management and defense of the PCF. Krupkin, at p. 6, 798 So.2d at 943-944. La.Rev.Stat. 40:1299.44 A(5)(b) provides:
The functions of collecting, administering, and protecting the fund, including all matters relating to establishing reserves, the evaluating and settlement of *364 claims, and relating to defense of the fund, shall be carried out by the board. La.Rev.Stat. 40:1299.44 D(2)(a) provides: The board shall be responsible, and have full authority under law, for the management, administration, operation and defense of the fund in accordance with the provisions of this Part.
La.Rev.Stat. 40:1299.44 D(2)(b)(x) expressly grants the Board authority to:

Defend the fund from all claims due wholly or in part to the negligence or liability of anyone other than a qualified health care provider regardless of whether a qualified health care provider has settled and paid its statutory maximum or has been adjudged liable or negligent. (Emphasis added).
In Krupkin we found La.Rev.Stat. 40:1299.44 D(2)(b)(x) specifically gives the Board authority to defend the PCF from all claims due to the negligence of a non-covered health care provider and this included opposing an exception of prematurity filed by a doctor on the grounds that the doctor is not a QHCP. Id. at p. 7, 798 So.2d at 944. There, as in the matter sub judice, the Board argued the doctor did not satisfy the second prong of La.Rev.Stat. Ann. 40:1299.42 A, which requires that to be a QHCP, the provider must pay a surcharge in accordance with La.Rev.Stat. 40:1299.44. If the Board was not allowed to appeal the trial court's grant of the exception of prematurity in favor of Dr. Krupkin finding that he was a QHCP, the Board would have been prevented from undertaking its responsibility to defend the PCF and would have been subject to exposure for the claims involved in that suit. Id. at p. 8, 798 So.2d at 945.
In the present case, the Board argues that if it is not allowed to intervene and seek review of the appellate court's granting of the exception of prematurity, that decision could become a final judgment not appealable by the Board. Therefore, it is only reasonable that the Board has authority under the Act and Code of Civil Procedure articles 1091,[5] 2083[6] and 2086[7] to seek review in this Court of the appellate court's judgment. We agree. Louisiana jurisprudence declaring that the Board has no standing to involve itself in a medical malpractice action relating to issues of liability unless there is a judgment or settlement pursuant to the provisions of La.Rev.Stat. Ann. 40:1299.44 C(5) is simply not applicable when the Board is seeking to intervene on the narrow issue of qualification of the health care provider for the protections afforded by the Medical Malpractice Act.
Our decision in Krupkin recognized that the Board had standing to determine the threshold issue of whether the health care *365 provider has met the requirements of the Act to be qualified under the Act. Although the procedural postures of this case differs somewhat from Krupkin, i.e. Krupkin arose as appeal of the district court's grant of the exception of prematurity, while the case herein arises from a writ seeking review of the court of appeal's denial of the Board's petition to intervene on rehearing of its decision reversing the denial of the exception, Krupkin's analysis is equally applicable herein. Therefore, we find the court of appeal should have granted the Board's petition of intervention in which the Board argued the court erred in finding the defendants qualified pursuant to the Act. Having granted the Board's writ application, we now address the remaining issue concerning whether the defendants were qualified under the Act.

Qualified Health Care Provider
Louisiana Revised Statutes 40:1299.42 sets forth the requirements for a health care provider to qualify for the protections and benefits of the Act as follows:
A. To be qualified under the provisions of this Part [Part XXIII. Medical Malpractice Act], a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
Subsection E provides, in pertinent part:
E. (1) Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider[.]
Thus there are two prongs to the test of whether a health care provider is qualified under the Act, namely, (1) proof of financial responsibility filed with the Board, La.Rev.Stat. Ann. 40:1299.42 A(1) and 40:1299.42 E, and (2) payment of the surcharge, La.Rev.Stat. Ann. 40:1299.42 A(2), which is necessary to provide monies for the fund, La.Rev.Stat. Ann. 40:1299.44 A(2)(a).[8]
But the qualification inquiry does not end here. The two prongs inquiry satisfies only the financial aspects of qualifying under the Act. There are licensing requirements that must be satisfied in order for a physician to qualify under the Act.
Of significant relevance are the definitions of "health care provider" and "physician" as used in the Act. The Act defines those terms, in pertinent part, as follows:
"Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, ... or any professional *366 corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.
La.Rev.Stat. Ann. 40:1299.41 A(1), (Emphasis added).
"Physician" means a person with an unlimited license to practice medicine in this state.

La.Rev.Stat. Ann. 50:1299.41 A(2), (Emphasis added).
In its opinion reviewing the trial court's denial of the exception of prematurity, the court of appeal reviewed only the two financial prongs necessary for a health care provider to qualify under the Act. The appellate court first reviewed the proof of financial responsibility filed by CompHealth. The court noted that the "claims-made" policy was effective from February 1, 2001 to February 1, 2002, but that CompHealth purchased tail coverage on February 27, 2002 to provide coverage for claims arising during that policy period but not reported until after the expiration of the claims-made policy. The court of appeal concluded, correctly, that CompHealth and Dr. Plautz satisfied the first prong by purchasing tail coverage which covered the claim filed on December 18, 2002.
The court then reviewed the surcharge prong and determined that CompHealth and Dr. Plautz had also met this requirement. The court relied upon Bennett, supra and Bennett's interpretation of La.Rev.Stat. Ann. 40:1299.42 E(1) to support its decision. Supra, at p. 363. Because qualification is effective, for those not self-insured, at the time the malpractice insurer accepts payment of the surcharge, and CompHealth had purchased tail coverage for the period in which the alleged malpractice occurred, the appellate court reasoned that CompHealth and Dr. Plautz were QHCPs, notwithstanding that the PCF had subsequently disqualified Dr. Plautz and refunded the surcharge. O'Brien, at p. 7-8, 877 So.2d at 155. The court of appeal fell into legal error by applying only the financial aspects required under the Act and failing to inquire as to whether the physician was eligible for qualification.
Well accepted principles of statutory interpretation dictate that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code Ann. art. 9; Russo v. Vasquez, 94-2407, p. 6 (La.1/17/95), 648 So.2d 879, 883. Accordingly, the starting point for the interpretation of any statutory provision is the language of the provision itself. Ginn v. Woman's Hosp. Found., Inc., 02-1913, p. 9 (La.4/9/03), 842 So.2d 338, 344.
Louisiana Revised Statutes 40:1299.44 provides for the creation, funding and administration of the PCF. Louisiana Revised Statutes 40:1299.44 D provides for the creation of the Board. This Board has full authority for the management, administration, operation and defense of the PCF in accordance with the provisions of the Act. La.Rev.Stat. Ann. 40:1299.44 D(2)(a); Dunn v. Bryant, 96-1765, p. 10 (La.App. 1 Cir. 9/19/97), 701 So.2d 696, 702, writ denied, 97-3046 (La.2/13/98), 709 So.2d 752. The Act authorizes the Board to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority, *367 and discharge the responsibilities, conferred and imposed on it by the Act. La.Rev.Stat. Ann. 40:1299.44 D(3); Id. Therefore, the PCF possesses the requisite authority to determine eligibility in its administration of the PCF. The Board determined that physicians not licensed by the state of Louisiana were not eligible to participate in the PCF, and refunded the surcharges CompHealth had paid for such physicians. The Act defines physician to "mean[ ] a person with an unlimited license to practice medicine in this state."[9] La.Rev.Stat. Ann. 40:1299.41 A(2). The Act provides, in pertinent part, "`Health care provider' means a person ... licensed ... by this state to provide health care or professional services as a physician..." La. Rev. Stat Ann. 40:1299.41 A(1). The plain language of the Act mandates that a physician must have a license from Louisiana in order to be eligible for the PCF. If CompHealth disagreed with the Board's determination that CompHealth's locum tenens physicians without Louisiana licenses were ineligible to participate, it had the right to appeal that determination to the Board, which is mandated to place such appeals on the agenda of its next meeting. La. Admin. Code tit. XXXVII, § 513D (2002).
The pivotal undisputed fact in this case is that Dr. Plautz was not licensed by the State of Louisiana to practice medicine. The dispositive issue before us is whether a physician not licensed by the State of Louisiana is eligible for qualification under the Act. The statutory language is clear that only those individuals and entities that meet the definition of health care provider in La.Rev.Stat. Ann. 40:1299.41 A are eligible for qualification. It is uncontested that Dr. Plautz was not licensed by Louisiana to provide health care or professional services as a physician, thus, he was never at any time eligible for coverage under the Act. The appellate court's extension of coverage to Dr. Plautz was erroneous.
Nor do we agree with CompHealth's argument that it is a QHCP and therefore, Dr. Plautz, as an agent of CompHealth, is also a QHCP. La.Rev.Stat. Ann. 40:1299.41 A(1) provides, in pertinent part:
"Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility or institution licensed or certified by this state to provide health care or professional services ... or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.
(Emphasis added).
CompHealth contends that as a QHCP, Dr. Plautz, as its agent, was also a QHCP. La.Rev.Stat. Ann. 40:1299.45 A(2) provides, in pertinent part:

*368 When, and during the period that each shareholder, partner, member, agent, officer or employee of a corporation, partnership, limited liability partnership, or limited liability company, who is eligible for qualification as a health care provider under this Part, and who is providing health care on behalf of such corporation, ... is qualified as a health care provider under the provisions of R.S. 40:1299.42 A, such corporation, ... shall, without the payment of an additional surcharge, be deemed concurrently qualified and enrolled as a health care provider under this Part.

(Emphasis added).
Contrary to CompHealth's argument, the corporation's qualification is concurrent with the qualification of the agent or employee who is providing health care on behalf of such corporation.[10]
The Board argues that under La.Rev.Stat. Ann. 40:1299.45 A(2), Comp Health could have attempted to prove in the trial court that each of the shareholders or employees of Comp Health, who are eligible for qualification as a health care provider under the Act, was indeed PCF qualified. Had this been proven, then CompHealth could correctly have been found to be a QHCP without the payment of an additional surcharge. No evidence was submitted to show that each shareholder or employee of CompHealth, who was eligible for qualification, was PCF qualified under the Act. The Board takes the position that Comp Health was not qualified for the claims made by the plaintiffs. We agree.
Simply stated, a plain reading of the statute suggests that the corporation's qualification is dependent upon each shareholder, agent, officer or employee that is providing health care being qualified under La.Rev.Stat. Ann. 40:1299.42 A. If the doctor is not a QHCP, then neither is the corporation.
Defendants cite Miller v. Columbia/HCA Healthcare Corp.,[11] and Caruso v. Columbia/HCA Healthcare Corp.,[12] to support their argument that CompHealth is entitled to qualification. However, those cases are inapplicable because in both matters, the hospital and/or doctor was a QHCP. In Caruso, the plaintiffs filed suit against University Healthcare System d/b/a Tulane Univ. Hospital and Clinic and its corporate owner, Columbia/HCA. Both defendants filed exceptions of prematurity, which the trial court granted. In affirming, the court of appeal agreed with Columbia that La.Rev.Stat. Ann. 40:1299.42 E(2) and La.Rev.Stat. Ann. 40:1299.45 A(2) mean that the corporate owner of a qualified health care provider is also treated as a qualified health care provider.[13]Caruso, at p. 2, 724 So.2d at 275. In Miller, the plaintiffs filed their claim with the PCF against Columbia/Lakeview Regional Medical Ctr. (the hospital) and Dr. Portacci. They then filed a petition against Columbia, the corporate owner of a qualified health care provider, alleging liability on Columbia's part individually, for its own actions, and vicariously for the actions of *369 the hospital and hospital staff. In reversing the trial court's denial of the exception of prematurity, the court of appeal, relying upon Caruso, also found that a corporate owner of a qualified health care provider is treated as a QHCP without the necessity of qualifying independently and paying an additional surcharge. Miller, at p. 5, 754 So.2d at 1000.
These two statutory provisions, La.Rev.Stat. Ann. 40:1299.42 E(2) and La.Rev.Stat. Ann. 40:1299.45 A(2) indicate a legislative intent not to require multiple qualifications and surcharges where common ownership is present. Caruso, at p. 2, 724 So.2d at 275, (emphasis supplied). Because Dr. Plautz is not a QHCP, then neither is CompHealth, at least for the purposes of any malpractice action against Dr. Plautz.

CONCLUSION
In conclusion, the court of appeal erred in denying the Board's petition of intervention. We reiterate our holding that in the narrow circumstances concerning the issue of whether a health care provider is qualified under the Medical Malpractice Act, the Board has standing to intervene. The court of appeal further erred in reversing the trial court's denial of the defendants' exception of prematurity. We hold the Board was correct in determining a physician unlicensed by Louisiana is not eligible for the PCF, pursuant to the statutory language of the Medical Malpractice Act.

DECREE
For the above and foregoing reasons, the judgment of the court of appeal is reversed and set aside. The Board's petition for intervention is hereby granted and the judgment of the trial court denying the defendants' exception of prematurity is reinstated. This matter is remanded to the trial court for further proceedings consistent with the views expressed herein.
REVERSED and REMANDED.
NOTES
[1] A "claims-made" policy only covers claims made during the policy period.
[2] In their brief to this Court, the plaintiffs inform that a protective suit was also filed in Federal Court under the Federal Tort Claims Act. This suit was dismissed and has been re-filed. The plaintiffs state that Dr. Rizvi has been shown to be an employee of the VA Hospital, and the status of Dr. Rizvi and the VA Hospital are not at issue.
[3] Writ denied, 02-1208 (La.6/21/02), 819 So.2d 338.
[4] Because the plaintiffs have settled with the defendants, we will not review their assignment of error that the defendants had waived the exception of prematurity by making a general appearance before the exception was filed.
[5] La.Code Civ. Pro. art. 1091 provides:

A third person having an interest therein may intervene in a pending action to enforce a right to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant.
[6] La.Code Civ. Pro. art. 2083 provides:

A. An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur under Article 1814.
B. In reviewing a judgment reformed in accordance with a remittitur or addittur, the court shall consider the reasonableness of the underlying jury verdict.
[7] La.Code Civ. Pro. art. 2086 provides:

A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken.
[8] La.Rev.Stat. 40:1299.44 A(2)(a) provides: In order to provide monies for the fund, an annual surcharge shall be levied on all health care providers in Louisiana qualified under the provisions of this Part.
[9] We note that La.Rev.Stat. Ann. 37:1276 provides:

The board [Louisiana State Board of Medical Examiners] may issue a license as provided for in R.S. 37:1274, without examination in this state, to any applicant possessing a valid, unrestricted license to practice medicine, whether allopathic or osteopathic, or osteopathy in any other state of the United States provided the board is satisfied that the license from the other state is based upon an examination and other requirements substantially equivalent to the requirements of this Part.
[10] Although we are focusing on the term corporation, because CompHealth is a corporation, our rationale applies to all other juridical persons outlined in the Act.
[11] Miller v. Columbia/HCA Healthcare Corp., 98-1874 (La.App. 1 Cir. 9/24/99), 754 So.2d 998.
[12] Caruso v. Columbia/HCA Healthcare Corp., 98-0449 (La.App. 4 Cir. 11/25/98), 724 So.2d 274.
[13] The plaintiffs did not contest the fact that Tulane was a QHCP entitled to the protections and privileges of the Act. The plaintiffs did not assert as error the granting of the exception of prematurity in favor of Tulane.