Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,500-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: MEDICAL REVIEW PANEL
PROCEEDINGS FOR THE CLAIM OF
JACK EDWARD PRICE, II (D)

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. M-52-2023

Honorable Frederick Douglass Jones, Judge

* * * * *

| | |
|---|---|
| MICHAEL J. MESTAYER, APLC | Counsel for Plaintiffs-Appellants, Charlene B. Price, J. Marie Trotter, Jack Edward Trotter, and The Estate of Jack Edward Price, II (D) |
| LAW OFFICES OF G. GREGORY GREEN<br>By: G. Gregory Green | |
| MCNEW, KING, LANDRY &<br>HAMMETT, LLP<br>By: Brady D. King, II<br>April Martin Hammett | Counsel for Appellee, Louisiana Patient's Compensation Fund Oversight Board |
| BRADLEY MURCHISON<br>KELLY & SHEA, LLC<br>By: Micholle W. Mordock | Counsel for Defendants-Appellees, Tusk Enterprises, LLC and Rhino Medical Services |

* * * * *

Before COX, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.,**

This is a medical malpractice case. This appeal arises out of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, the Honorable Frederick D. Jones, Judge, presiding. The plaintiffs, the spouse and children of the decedent, Jack Edward Price, II, have appealed from the trial court's judgment granting exceptions of no cause and no right of action filed by the appellee, the Patients Compensation Fund Oversight Board ("the PCF") and dismissing the plaintiffs' claims against the PCF. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTS/PROCEDURAL BACKGROUND

Tusk Enterprises, LLC, d/b/a Rhino Medical Services ("Tusk"), a medical staffing provider, is insured in that capacity as a Qualified Health Care Provider ("QHCP") by the PCF. Tusk contracted with and paid Larry A. Sonna, M.D., to provide his services as a physician at St. Francis Medical Center in Monroe, Louisiana. Dr. Sonna provided treatment to Jack Price at St. Francis Medical Center; Price died while hospitalized at St. Francis Medical Center on September 6, 2021.

Following Price's death, his spouse and children filed a medical malpractice claim against Tusk, asserting that: Tusk was negligent in failing to properly vet Dr. Sonna prior to placing him at St. Francis Medical Center; Tusk failed to ensure that Dr. Sonna was licensed in Louisiana;[1] the medical care provided by Dr. Sonna to Jack Price was deficient; and, this negligence contributed to the death of Price.

---

[1] Neither Dr. Sonna nor Tusk had completed the necessary paperwork with the Louisiana State Board of Medical Examiners ("LSBME") which would have provided Dr. Sonna with a temporary license to provide medical care in the State of Louisiana. The appellants also claim that the unlicensed Dr. Sonna was not himself covered by the Louisiana Medical Malpractice Act ("LMMA").

The plaintiffs, Tusk, and Tusk's malpractice insurer agreed to a settlement in the amount of $100,000. On December 12, 2023, the parties filed a "Joint Petition for Court Approval of Settlement Pursuant to La. R.S. 40:1231.4(C) and Demand for Excess Damages from the Patient's Compensation Fund." The PCF filed an exception of no cause of action, plea of defenses, and an answer in response to the settlement to the extent it sought to reserve rights against the PCF for excess damages, together with a memorandum in support of its objection. The basis for the PCF's objection and exception was that Tusk was not entitled to coverage by the PCF because it was not a QHCP for purposes of any health care provided by Dr. Sonna, who was not a health care provider under the LMMA because he was not licensed to practice medicine at all times pertinent to this action.

A hearing on the petition for approval was held on March 4, 2024, and on May 2, 2024, the trial court approved the terms of the joint petition and reserved to the plaintiffs "… the right to seek additional damages, IF ANY, from the Louisiana Patient's Compensation Fund Oversight Board as provided by the Louisiana Medical Malpractice Act, La. R.S. 40:1231, *et seq.*"

The PCF then filed an exception of no right of action and a motion to set both its previously filed no cause of action and right of action for hearing. The plaintiffs filed a memorandum in opposition to the exceptions and attached exhibits. The PCF filed a response. After a hearing on November 4, 2024, the trial court's judgment granting the exceptions filed by the PCF was rendered on December 26, 2024. The trial court rendered judgment granting the exceptions dismissing all of the plaintiffs' claims against the PCF. On January 8, 2025, the trial court rendered an amended

judgment.  The plaintiffs have appealed.  For the reasons set forth below, we affirm the judgment of the trial court.

## DISCUSSION

### Arguments of the Parties

In their first assignment of error, the plaintiffs assert that the trial court erred in failing to find that a voluntary settlement between them, Tusk, and Tusk's medical malpractice insurer for $100,000 precluded the PCF from disputing Tusk's liability.  According to the plaintiffs, it is undisputed that Tusk was a QHCP.  The plaintiffs further argue that the following acts/failures to act constituted medical care under the LMMA:  Tusk's decision to provide Dr. Sonna to the medical staff of St. Francis Medical Center; Tusk's agreement to obtain licensure of Dr. Sonna in Louisiana and its failure to do so; Tusk's failure to vet Dr. Sonna; and Dr. Sonna's provision of medical services to Jack Price.

The plaintiffs point out that once a QHCP agrees to pay its $100,000 maximum liability exposure, certain actions are triggered, including the admission of liability or fault.  This admission is binding on the PCF, whose only recourse is to contest damages.  Thus, the settlement itself, which is between the health care provider and the plaintiff, cannot be appealed, but the amount of damages assessed by the court, which can include excess damages to be paid by the Fund, may be appealed.

The plaintiffs assert that, as the joint petition for approval for settlement states, Tusk and its insurer agreed to settle for their maximum liability, $100,000.  This agreement triggered an admission of liability; the only remaining issue between the plaintiffs and the PCF is the extent of excess damages.  The PCF is never a direct defendant in a medical

3

malpractice action—its rights are strictly limited to those as set forth in the MMA.

In their second assignment of error, the plaintiffs urge that the trial court erred in granting the exceptions filed by the PCF. The plaintiffs contend that malpractice includes a QHCP's failure to adequately vet the qualifications of a health care worker like Dr. Sonna, citing *Thomas v. Regional Health System of Acadiana, LLC*, 19-0507 (La. 1/29/20), 347 So. 3d 595. In *Thomas*, the Louisiana Supreme Court held that the plaintiff's allegations against the hospitals for negligent re-credentialing "necessarily fall within the definition of 'malpractice' under the LMMA because they constitute an 'unintentional tort … based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient … in the training or supervision of health care providers'." *Id.*, 347 So. 3d at 602.

The plaintiffs reiterate that the trial court erred in failing to recognize that the sole issue was the QHCP status of Tusk, who is enrolled with the PCF as a medical staffing provider and pays premiums to the PCF for this status. What occurred is "the very nature of Tusk's business," claim the plaintiffs. Tusk vets and provides medical staff as needed by health care facilities.

The PCF first points out that Tusk's business was providing temporary medical service providers to medical facilities like St. Francis Medical Center. Dr. Sonna was one such medical service provider. The plaintiffs' claim against Tusk is that Tusk failed to provide a properly licensed and trained physician (Dr. Sonna), which resulted in the injuries to and death of

4

Price because Dr. Sonna was not licensed to practice medicine in the State of Louisiana at the time.

The PCF urges that, in opposing the no right of action exception, the plaintiffs offered evidence which failed to establish three important facts. There was no proof that: (1) Dr. Sonna graduated from an accredited medical school, is a medical doctor, or, more specifically, a "physician" as defined by the LMMA; (2) Dr. Sonna was licensed to practice medicine in the State of Louisiana; or (3) Dr. Sonna was himself enrolled as a QHCP with the PCF. This lack of proof is important, urges the PCF, because as a matter of law, if Dr. Sonna was not licensed to practice medicine in Louisiana, he cannot be considered a "health care provider" for LMMA purposes—and Tusk's liability for his malpractice depends on his status as a health care provider.

Dr. Sonna did not have an unlimited license to practice medicine in the State of Louisiana; therefore, he was not a "physician" under the LMMA. In order for the PCF to be exposed to and liable for excess damages under the LMMA, there must be "malpractice" committed by a "health care provider." Because Dr. Sonna did not qualify as a "health care provider," he was not covered by the LMMA. Furthermore, the unlicensed Dr. Sonna's acts, omissions, or negligence would not be considered "malpractice" under the LMMA.

Dr. Sonna's status as an unlicensed physician in the State of Louisiana excludes him from coverage under the LMMA, and therefore, results in the plaintiffs having no right to demand excess damages from the PCF based on his acts, omissions, or negligence.

In *O'Brien v. Rizvi*, 04-2252 (La. 4/12/05), 898 So. 2d 360, the Louisiana Supreme Court found that a physician not licensed by the State of

5

Louisiana was ineligible for coverage under the LMMA.  The financial responsibility requirement for coverage was not enough.  Specifically, the Court reasoned:

> The pivotal undisputed fact in this case is that Dr. Plautz was not licensed by the state of Louisiana to practice medicine.  The dispositive issue before us is whether a physician not licensed by the State of Louisiana is eligible for qualification under the Act.  The statutory language is clear that only those individuals and entities that meet the definition of health care provider in [La. R.S.] 40:1299.1[2] are eligible for qualification.  It is uncontested that Dr. Plautz was not licensed by Louisiana to provide health care or professional services as a physician, thus he was never at any time eligible for coverage under the Act.

*Id.*, 04-2252, p. 11, 898 So. 2d at 367.

In *O'Brien*, CompHealth, the staffing company defendant, argued that its status as a QHCP extended to Dr. Plautz because of the agency relationship between the two.  The Supreme Court rejected this argument outright, finding that: (1) CompHealth's qualification under the LMMA did not extend to Dr. Plautz; and (2) CompHealth was itself not a QHCP, at least for purposes of any malpractice action against Dr. Plautz.  Specifically, the Supreme Court found that the converse was true—the corporation's qualification is concurrent with the qualification of the agent or the employee who is providing health care on behalf of the corporation.  *Id.*, 04-2252, p. 12, 898 So. 2d at 368.

According to the PCF, the Supreme Court held that the dispositive issue for eligibility under the LMMA as a health care provider was whether the treating physician was licensed to practice in the State of Louisiana.  In *O'Brien*, the Court held that, without a valid license to practice in Louisiana,

---

[2] As noted *infra*, "health care provider" is now defined in La. R.S. 40:1231.1(A)(10), the Legislature having reorganized and recodified Chapter 5 of Title 40 in Acts 2015, H.C.R. No. 84.

neither the physician nor any entity or corporation with which he was associated would be considered a QHCP for claims arising out of the malpractice of the unlicensed physician. The PCF suggests to this Court that any attempt by the plaintiffs to distinguish the *O'Brien* decision should be ignored as invalid and contrary to public policy considerations.

Because Dr. Sonna was not a licensed physician, neither he nor Tusk was covered under the LMMA for any claims arising out of or resulting from his acts, omissions, or negligence regarding his care of Price. Thus, there are no claims against Tusk that the plaintiffs could reserve against the PCF for excess damages, argues the PCF.[3]

### *Analysis*

The LMMA contemplates that the issue of liability is generally to be determined between the malpractice victim (or his successors in interest) and the health care provider, either by settlement or trial, with the PCF being primarily concerned with the issue of the amount of damages. *Hanks v.*

---

[3] To the extent that the plaintiffs are seeking to reserve rights against the PCF for excess damages for a negligent credentialing claim, the PCF urges that such a claim is not "malpractice" under the LMMA. *See*, La. R.S. 40:1231.1(A)(13); *Billeaudeau v. Opelousas General Hospital Authority*, 16-0846 (La. 10/19/16), 218 So. 3d 513. The PCF points out that a case relied on by the plaintiffs in support of their argument that Tusk's qualification under the LMMA should extend to Dr. Sonna, *Thomas, supra*, does not in fact support that argument. Instead, *Thomas* involves a recredentialing claim, which can be malpractice. However, Tusk does not credential ***or*** recredential physicians. There are no rights to be reserved, urges the PCF.

The PCF asserts that should this Court find that *O'Brien* does not extend to this claim, then the LMMA nonetheless requires the legal finding that the plaintiffs cannot reserve rights against the PCF for excess damages allegedly arising out of Tusk's provision of Dr. Sonna to St. Francis Medical Center. This is because the definition of "malpractice" under La. R.S. 40:1231(A)(13) does not include the provision of an unlicensed physician to a hospital, since an unlicensed physician does not qualify as a "health care provider" as defined by the LMMA. The PCF reiterates that, in order for a health care provider such as Tusk to commit malpractice by failing to properly supervise or train a physician it provides to a hospital, that physician must be a "health care provider" as defined by the LMMA, which Dr. Sonna was not, since he did not have an unrestricted license to practice medicine in Louisiana at the time he provided care to Jack Price at St. Francis Medical Center.

*Seale*, 04-1485, p. 10 (La. 6/17/05), 904 So. 2d 662, 668; *Stuka v. Fleming*, 561 So. 2d 1371, 1374 (La. 1990), *cert. denied*, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). The liability of a single qualified health care provider is limited to $100,000 plus interest for all malpractice claims arising out of injuries to or death of a patient. La. R.S. 40:1231.2(B)(2). Any damages awarded or agreed to in excess of $100,000 shall be paid by the PCF; the total amount recoverable, however, exclusive of future medical care and related benefits, shall not exceed $500,000, together with interest and costs. La. R.S. 40:1231.2(B)(1) and (3)(A).

A settlement for $100,000 between a claimant and a qualified health care provider results in a statutory admission of liability as to the health care provider. La. R.S. 40:1231.4(C)(5)(e). Once the PCF statutorily intervenes, the case proceeds to trial pursuant to La. R.S. 40:1231.4(C). After the PCF has "been given an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense," trial to determine the amount of damages for which the PCF may be liable in excess of the $100,000 paid by the health care provider or its insurer will take place. La. R.S. 40:1231.4(C)(5)(a).

In the instant case, the PCF filed an exception of no right of action (and re-urged its exception of no cause of action) in response to the May 4, 2024, judgment of approval of settlement which reserved to the plaintiffs the right to seek additional damages, "IF ANY," from the PCF as provided by the LMMA. The basis for the PCF's opposition was that the settlement involved a claim not covered under the LMMA because Tusk and Dr. Sonna were not qualified health care providers for any health care provided by Dr. Sonna, who was not licensed to practice medicine in Louisiana at the time of

he provided medical care to Mr. Price during his hospitalization at St. Francis Medical Center.

The LMMA is to be applied in a manner which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. *Khammash v. Clark*, 13-1564, p. 13 (La. 5/7/14), 145 So. 3d 246, 256-57, *citing* La. C.C. art. 10, and *Hall v. Brookshire Bros., Ltd.*, 02-2404, p. 13 (La. 6/27/03), 848 So. 2d 559, 568. The Supreme Court in *Khammash* observed that this was clearly to hold the PCF liable only for acts constituting medical malpractice. *Id.* at p. 14, 145 So. 3d at 257.

Within 15 days of receipt of a claim for medical malpractice, the PCF has to confirm to the claimant by certified mail, return receipt requested, that the filing has been officially received and whether or not the named defendant is a qualified health care provider. La. R.S. 40:1231.8(A)(3)(a). As such a determination must be made and communicated within such a short period of time, it is necessarily made pursuant to La. R.S. 40:1231.2(A)(1) and (2), without consideration of the particular facts and circumstances involved in the actual claim, as they have not been developed at that stage of the process.

Under the LMMA, the Oversight Board is responsible and has full authority for the management and defense of the PCF. *O'Brien*, 04-2252, p. 5, 898 So. 2d at 363, *citing Bennett v. Krupkin*, 01-0209, p. 6 (La. 10/16/01), 798 So. 2d 940, 943-44. Furthermore, under the LMMA, the Board has the authority to defend the PCF from all claims due wholly or in part to the negligence or liability of a non-covered health care provider, regardless of whether a covered health care provider has settled or paid its statutory maximum or has been adjudged liable or negligent. *Id.* Because the PCF's

liability depends on whether the health care provider is a QHCP, the PCF must necessarily be allowed the right to raise the issue of a health care provider's qualification or lack thereof as facts are revealed in discovery or during the settlement process. *Id.*

In order to qualify for the protections and benefits of the LMMA, a health care provider must satisfy both the financial aspects ***and*** the licensing requirements. *O'Brien*, 04-2252, p. 8, 898 So. 2d at 365. La. R.S. 40:1231.1(A)(10) provides in part that "health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by the state to provide health care or professional services as a physician. La. R.S. 40:1231.1(A)(16) provides that "physician" means a person with an unlimited license to practice medicine in the state.

CompHealth, the staffing company in *O'Brien*, was a QHCP; Dr. Plautz, the physician, was not licensed as a physician and therefore not eligible for qualification. The Supreme Court held that in such cases, the staffing company's qualification under the LMMA was concurrent with the qualification of the agent or employee who was providing health care on behalf of the staffing company. *Id.*, 04-2252, p. 12, 898 So. 2d at 368. In other words, since the unlicensed physician was not a QHCP, neither was CompHealth, at least for any malpractice action involving Dr. Plautz.

As did the trial court, we find the *O'Brien* case to be directly on point. In keeping with the clear mandate of the LMMA, that the PCF's liability is to be limited to damages caused by medical malpractice committed by qualified health care providers, we affirm the judgment of the trial court

10

sustaining the PCF's exceptions of no cause and no right of action and dismissing the plaintiffs' claims.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the plaintiffs, the spouse and children of the decedent, Jack Edward Price, II.

**AFFIRMED.**