775 So.2d 649 (2000)
Charles Wayne BOYD, et al.
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al.
No. 99-1820.
Court of Appeal of Louisiana, Third Circuit.
December 20, 2000.
*650 David A. Fraser, Fraser, Morris & Wheeler, Lake Charles, LA, Counsel for Plaintiffs-Respondents, Charles Wayne Boyd, et al.
Milo A. Nickel, Jr., Michele S. Caballero, M. Keith Prudhomme, Lake Charles, LA, Counsel for Defendant-Applicant, Louisiana Patient's Compensation Fund.
Court composed of HENRY L. YELVERTON, SYLVIA R. COOKS and MICHAEL G. SULLIVAN, Judges.
COOKS, Judge.
Charles and Rebecca Boyd, individually and on behalf of their minor child, instituted this action initially asserting that Dr. Roy L. Sasser, Jr. "committed various acts of malpractice resulting in severe damage and harm" to Charles Wayne Boyd. Their claims first were presented to a Medical Review Panel, duly constituted pursuant to the Louisiana Medical Malpractice Act. The panel rendered a unanimous opinion concluding that Dr. Sasser "failed to comply with the appropriate standard of care... and the conduct complained of was a factor of resultant damages." Subsequently, the Boyds filed a petition with the *651 Calcasieu Parish District Court essentially reurging the malpractice claim presented by them to the Medical Review Panel. The petition named as defendants the estate of Dr. Sasser, St. Paul Fire and Marine Insurance Company (Dr. Sasser's malpractice insurer), and the Louisiana Patient's Compensation Fund (the PFC), as the responsible party over and above any coverage provided by St. Paul.
The plaintiffs also alleged St. Paul, the PFC, and/or the State of Louisiana Office of Risk Management "conspired and acted in concert" to deny them certain basic constitutional and statutory rights. Specifically, they asserted in the following paragraphs:

27
On information and belief, St. Paul was prepared to pay its statutory and policy limit of $100,000.00 to petitioners to settle all claims pending against ST. PAUL and DR. ROY L. SASSER, JR., herein, reserving unto petitioners their claims against PFC. Prior to St. Paul making that offer to petitioners, on information and belief the PCF contacted ST. PAUL and advised ST. PAUL that it did not desire that ST. PAUL pay its policy limit and, in fact, offered valuable consideration to ST. PAUL in exchange for ST. PAUL not offering its policy limit to petitioners.
28
The actions by ST. PAUL in accepting the "deal" made by the PCF and the actions by the PCF and/or THE STATE OF LOUISIANA OFFICE OF RISK MANAGEMENT, in making this deal of indemnity and payment to ST. PAUL effectively denied to petitioners the benefits and protection of the Louisiana Medical Malpractice Act in that it denied to petitioners the $100,000.00 payment that was to be made by ST. PAUL, and further denied to petitioners the liability determination that such a payment and partial settlement would produce.
29
Petitioners alleged that this conspiracy and joint act by ST. PAUL and PCF and/or THE STATE OF LOUISIANA, OFFICE OF RISK MANAGEMENT, have been continuing in nature and have resulted in a deprivation and have intentionally created loss of the civil rights of petitioners as guaranteed in the United States Constitution. This action has been through color and complicity of State Law because of the action of the PCF and OFFICE OF RISK MANAGEMENT and the relationship defendants share with the State of Louisiana as participants in the Louisiana Malpractice program.
30
The State of Louisiana (PCF), pursuant to the provisions of LSA-R.S. 40:1299.44, et seq., serves as trustee of the funds known as the Patient Compensation Fund. Under that statute, the State of Louisiana has and owes to petitioners a fiduciary duty to administer those funds for the use, benefit and protection of petitioners. The State of Louisiana is prohibited from using the PCF for purposes other than as provided by LSA 40:1299.44 et seq. Indemnity and hold harmless agreements whereby the State (PCF) or OFFICE OF RISK MANAGEMENT agrees to protect St. Paul (and other malpractice insurers) from a portion of their liability for the underlying coverage are contrary to LSA-R.S. 40:1299.44, et seq. Additionally, such agreements violate the due process and equal protection rights of petitioners as those rights are guaranteed by the United States and Louisiana State Constitutions.
31
Petitioners allege that the limitation of liability provisions of the Louisiana Malpractice Act are unconstitutional as *652 it treats petitioners unfairly and denies due process of law and equal protections of law as written and enacted. Additionally, the unfair dealing by the PCF and ST. PAUL is an effort to prohibit petitioners from enjoying the one favorable provision of the Louisiana Malpractice Act, the determination of liability and causation, once the policy limit of ST. PAUL was paid. On information and belief, this activity is a custom and practice of the PCF and is intended to and does deprive persons such as petitioners of the basic guarantee of property, due process of law and equal protection as granted in the U.S. Constitution. This conduct is in violation of the fiduciary relationship between the fund administrator and the plaintiffs. Petitioners are entitled to all damages and to attorney's fees that have resulted from the wrongful conspiratorial behavior of ST. PAUL and the PCF as set forth herein, pursuant to the United States Code Title 42 Section 1983.
32.
Because of this wrongful conspiracy and wrongful joint conduct, defendants ST. PAUL and the PCF and/or THE STATE OF LOUISIANA, OFFICE OF RISK MANAGEMENT, are indebted unto petitioners for sums over and above the sums allowed through the Louisiana Medical Malpractice Act, including but limited to all damages, penalties and attorney's fees resulting from the harm to petitioners and allowed by USC 42:1983.
As surmised from the pleadings, St. Paul initially responded to the petition by tendering its $100,000.00 policy limit to plaintiffs in exchange for dismissal of the malpractice claim asserted by them against it and Dr. Sasser. St. Paul and the other defendants then filed exceptions to the petition asserting, in relevant part: (1) by settling the malpractice claim with the healthcare provider, plaintiffs relinquished their right to challenge the constitutionality of [the] statutory framework" of LSA-R.S. 40:1299.42; and (2) as provided by LSA-R.S. 40:1299.41(1) plaintiffs have no cause of action to assert the claims allegedly arising from a conspiracy, wrongful joint conspiracy and violation 42 U.S.C. § 1983. The defendants also answered the suit on the same date and denied all the allegations recited in paragraphs 27-32 of plaintiffs' petition.
Next, various defendants were added, including the State, through the Division of Administration, and multiple exceptions, motions, and other pleadings were filed. Plaintiffs then propounded interrogatories essentially asking defendants to disclose whether the alleged agreement was entered between them, the details of the agreement, the employees or managers of the PCF and St. Paul who made the agreement, and whether the PCF and Office of Risk Management entered similar agreements with insurers in the past. They also served defendants with a Request for Production of Documents asking they provide a copy of all documents and/or correspondence which evidence any agreements or partial indemnity arrangement between St. Paul and the PCF relating to this case. Receiving no discovery responses from defendants, plaintiffs filed a motion to compel them to answer the interrogatories and documentary requests. Defendants filed a motion for protective order asserting "[s]ince the liability of appearers is limited by the provisions of LSA-R.S. 40:1299.41 et seq., specifically, LSA-R.S. 40:1299.41(1) and 40:1299.42(B)(2)," they desire that a protective order issue "limiting the scope of discovery proposed by plaintiffs ." After considerable procedural posturing between the parties, the pending exceptions and the requests for protective order filed by defendants and the Motions to Compel discovery filed by plaintiffs were all assigned for hearing. The trial court orally denied defendants' multiple requests for protective orders and granted plaintiffs' motion compelling them to answer the interrogatories and discovery requests.[1] *653 The trial court did not rule on the merit of the exceptions.[2] Only the PCF applied for supervisory writs with this Court, which we denied, stating:
The trial court's ruling on discovery matters should not be disturbed absent a showing of abuse of the great discretion conferred on the trial court in this area. Holloway v. City of Alexandria, 506 So.2d 234 (La.App. 3 Cir.1987). Based upon the record presented to this court, we find that the trial court acted with the "great discretion" afforded it in allowing the discovery process to proceed in the instant matter.
The Exception raising the question whether or not the plaintiff-respondents have stated a recognizable cause of action under the laws of this state for the alleged `conspiracy' appears to have been deferred by the trial court until a later date. As such, this court will not consider that particular assignment of error at this time.
Boyd v. St. Paul Fire & Marine Ins. Co., W99-1820 (La.App. 3 Cir. 12/28/99).
Subsequently, the PCF applied for writs with the Louisiana Supreme Court which were granted, and the matter was remanded to this Court directing us to order "relators" to file the requested documents under seal, for an in camera inspection, and then to rule on the merits of the application. Boyd v. St. Paul Fire & Marine Ins. Co., 00-276 (La.2/2/00); 753 So.2d 841. We have received and examined the documents so ordered; and, again, we deny the PCF's application for additional reasons expressed below.

ANALYSIS
The PCF argues the Motion for Protective Order it filed should have been granted for three reasons: (1) La.R.S. 40:1299.44(D)(4) clearly provides any communications or agreements between any enrolled healthcare provider, its insurer and the PCF, pertaining to settlement or defense of any malpractice claim, are privileged and confidential; (2) the information plaintiffs seek is privileged as attorney work-product pursuant to La.Code Civ.P. art. 1424; and (3) La.R.S. 40:1299.44(I) provides that the PCF is not liable for any sums except those arising from medical malpracticethus plaintiffs have no cause of action against it for damages arising from the conduct complained of and the discovery they seek is neither relevant nor likely to lead to discoverable information.[3] The PCF did not invoke the attorney-client privilege as a basis for its motion for protective order. When it sought supervisory writs with this Court, the PCF attempted for the first time to invoke this privilege. The original motion sought an order limiting the scope of plaintiffs discovery because, the mover complained, the provisions of La.R.S. 40:1299.41 et seq. and 40:1299.42(B)(2) limited their liability. Apparently, St. Paul maintained that plaintiffs could not compel it to answer the interrogatories and produce the requested documents because its liability was limited to only $100,000; and St. Paul and PCF complained they were only liable for claims "arising from medical malpractice." At the hearing on the motions, plaintiffs acknowledged they entered a settlement with St. Paul and apparently dismissed their motion to compel it to answer the pending interrogatories and production requests.
The trial court then proceeded to address only the arguments advanced by the *654 PCF. Apparently by memorandum[4], it additionally urged all communication between it, the healthcare provider, and insurer was confidential and protected from discovery by R.S. 40:1299.44(D)(4). The trial court granted plaintiffs' motion to compel limiting discovery, however, "only... [to] communications between the Fund and St. Paul in regard to any type of deal they made in order to prevent a $100,000.00 settlement in this case." The following colloquy between the trial court and the attorneys then occurred:
MR. FRASER:
Judge, my suggestion would be that if Mr. Prudhomme would prepare full responses to the questions asked I would not mind at all an in camera inspection by the Court and even some deletion of paragraphs or sections of letters if they happen to address both topics.
THE COURT:
I'll be glad to do that. I'd like you to pare it down as much as you can. I'll be glad to do that. This file may be like this, it may be like that, but I'll be glad to do that.
MR. FRASER:
Again, I'm not asking for the defense file. I'm asking only for those materials that relate to the alleged deal. If there was no deal, then there's nothing to produce. If there are things to produce, my concern isthere may be a letter where merits of defense are discussed and then some paragraph or statement may be made regarding the deal.
THE COURT:
All right. Mr. Prudhomme?
MR. PRUDHOMME:

What I'll do, Your Honor, is put together pull from that file those items we discussed here today and bring to your attention
THE COURT:
Let Mr. Fraser know when you're bringing them
MR. PRUDHOMME:
Oh, absolutely. I'll copy Mr. Fraser with-I'll send you by correspondence and copy Mr. Fraser so he'll know that I'm doing it. I have a problem with this paragraph or this or that, let you look at it and you give us your advice and then whatever we decide to do I'll block it off or whatever.
THE COURT:
Sounds good.
MR. FRASER:
And in the interrogatories one of the things I ask about, because I can't sue the State or an agency under 1983 as we've covered already, is I need and had requested the names of the participants to the deal, people who acted on behalf of the State
THE COURT:
All right. Thank you, counsel.
(Emphasis ours.)
The PCF, however, did not provide the limited information ordered by the trial court and it did not present any documents for his in camera inspection. Instead, the PCF filed the present application for supervisory writs with this Court.
Plaintiffs point out they alleged in their original and supplemental petitions two causes of action against various defendants (including individual PFC, St. Paul, and the State employees and managers) which are premised not on alleged acts of medical malpractice but on the breach of an independent fiduciary duty owed by the "state" to them and violations of their constitutionally protected civil rights. The fiduciary duty, they claim, the State owes them is found in La.R.S. 40:1299.44(A)(1), which reads in part:
The state recognizes and acknowledges that the fund [PCF] and any income from it are not public monies, but rather are private monies which shall be held in *655 trust as a custodial fund by the state for the use, benefit, and protection of medical malpractice claimants and the fund's private health care provider members, and all of such funds and income earned from investing the private monies comprising the corpus of this fund shall be subject to use and disposition only as provided by this Section.
By entering the alleged "deal" with St. Paul, plaintiffs allege the State (through the individual PCF employees and managers) breached the statutory duty imposed by this provision and violated their basic civil rights which are protected by 42 U.S.C. § 1983 and the Constitutions of the United States and this State. Plaintiffs assert they "have no way of proving that the deal was made, or of determining what person or persons are responsible for this `deal' without having the subject discovery answered." Thus, plaintiffs maintain they seek "limited discovery only of the facts and circumstances of the indemnity deal made between the defendants and of the names of the person or person responsible for making the deal."
La.Code Civ.P. art. 1422 provides generally that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. A trial court has broad discretion in discovery matters. Laburre v. East Jefferson Gen. Hosp., 555 So.2d 1381 (La.1990); Holloway v. City of Alexandria, 506 So.2d 234 (La.App. 3 Cir.1987). La.Code Civ.P. art. 1426 allows the trial court authority to issue a protective order, for good cause, limiting the scope of discovery. Such a protective order may be fashioned to preserve the confidentiality of the information disclosed. The granting or not of a protective order and the extent of protection extended are within the sound discretion of the trial court; and an appellate court will not ordinarily modify or reverse the trial court in such matters absent a showing of abuse of discretion. Cerre v. Cerre, 96 2328 (La.App. 4 Cir. 1/15/97); 687 So.2d 601.
Despite the broad language found in La.Code Civ.P. art. 1422, some things are excepted from discovery. La.Code Civ.P. art. 1424 established the "attorney work-product rule" and generally prohibits courts from ordering "the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial." The Louisiana Supreme Court in Succession of Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138,1143 (La. 1987), explained:
Nevertheless, the legislature in recognizing the privilege has decided that the detriment to justice from a power to shut off inquiry into pertinent facts is outweighed by the benefits to the system of justice (not to the client) form a franker disclosure in the lawyer's office.
But the person upon whom it is conferred may not invoke it for the purpose of committing a crime, fraud, or tort. United States v. Kelly, 569 F.2d 928 (5th Cir.1978). Moreover, the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981); United States v. Edwards, 39 F.Supp.2d 716 (M.D.La.1999). Otherwise, a client could conceal his illegal deed merely by disclosing it to his attorney or using the attorney as an emissary to perfect it.
The legislature also granted, by enacting La.R.S. 40:1299.44(D)(4), a special privilege to the PCF, healthcare providers and their insurers. The provision reads:
All communications made and all documents and records developed by, between or among the attorney general, claims manager, the oversight board, any person or entity contracted to provide services to or on behalf of the fund under this Part, and enrolled health care *656 providers and their insurers, relative to or in anticipation of defense of the fund or enrolled health care providers against, establishment of reserves with respect to, or prospective settlement of, individual malpractice claims shall be confidential and privileged against disclosure to any third party, pursuant to request
Though a privilege exists, a holder may engage in conduct which simply makes it unfair for him to insist on it. Succession of Smith, 513 So.2d 1138. Thus, the Supreme Court noted in Succession of Smith, 513 So.2d at 1143-44 (emphasis added), a waiver of the privilege most commonly results from a privilege-holder's abuse of it in three types of situations:
(1) "partial disclosure"a strategic introduction into evidence of only part of a larger class of privilege material; (2) "pretrial and partial disclosure"a pretrial disclosure of privileged communication indicating a decision to rely on privileged evidence at trial; (3) "placing privileged communications at issue" an affirmative pleading of a claim or defense that inevitably requires the introduction of privileged communications.

The abuses so delineated, however, are not exclusive; and the holder of a privilege, whether arising from the attorney-client or other protected relationships, may waive it by engaging in affirmative acts that "creates some further detriment to the truth-seeking process in addition to that already taken into account in the creation of the privilege itself." Succession of Smith, 513 So.2d at 1143, citing Richard L. Marcus, The Perils of Privilege: Waiver and the Litigator, 84 Mich. L.Rev. 1606, 1607 (1986).
All the defendants, including the PCF, filed an answer denying all the allegations contained in paragraphs 27-32 of plaintiffs' petition. We are satisfied if plaintiffs prove the allegations, they will establish defendants' responses were patently false and intended to undermine the truth-seeking process which is essential to the administration of justice. Additionally, they will show the PCF, acting in concert with others, agreed to expend trust fund money to affect issues of liability between them and the healthcare provider before there was a judgment, settlement, or arbitration award in violation of the law and the jurisprudence of this State. As noted by our brethren on the Fifth Circuit Court of Appeal in Schwarzenburg v. Jackson, 600 So.2d 163, 164-65 (La.App. 5 Cir.1992) (citations omitted):
Under the [MMA] the [PCF] cannot contest liability. If the Malpractice Act does not contemplate the [PCF] as a party defendant, then neither does it contemplate the [PCF] as an intervener on the issue of liability. By attempting to so intervene, to object to a settlement by the Health Care provider for the maximum liability permitted by the statute, the [PCF] is being an interloper and is attempting to do indirectly what it cannot do directly. If the Legislature had desired for the [PCF] to intervene or be able to object to a binding settlement for the maximum amount, it could and would have so provided.
... The [MMA] does not give the [PCF] status as a co-obligor or as a co-defendant with the health care provider or its insurer. The [PCF] is a creature of the legislature designed only to satisfy settlements and/or judgments against health care providers in excess of $100,000.00. It can have no greater status than given it by its creator (the Legislature).
Adopting the holding in that case, the First Circuit Court of Appeal in Potier v. Commissioner of Ins., 98-1063 (La.App. 1 Cir. 11/5/99); 753 So.2d 305, 311, writs denied, 00-319, 00-320 (La.4/20/00); 760 So.2d 345, held in "assuming responsibility for the defense costs incurred by a party in an effort to avoid liability, the PCF is only doing indirectly what it is prohibited from doing directly."
*657 We are convinced the legislature in granting the attorney-client privilege and the special privileged found in La.R.S. 40:1299.44(D)(4) did not thereby intend to allow the PCF, healthcare providers, and their insurers to thwart the judicial process with impunity or to engaged in conduct prohibited by the Medical Malpractice Act without consequence by shielding their conduct from discovery. The trial court did not err in ordering limited discovery in this case and properly denied the request for protective order.

CONCLUSION
For reasons expressed above, the PCF application for supervisory writ is denied. Costs are assessed against the PCF.
WRIT DENIED.
NOTES
[1] In so ruling, the judge expressed grave concerns, noting if plaintiffs' counsel is able to prove the conduct he alleged the defendants engaged in "it's a black eye on this whole medical malpractice and patient compensation fund idea as far as the State of Louisiana is concerned."
[2] At oral argument, counsel for the PCF stated the exceptions of no cause of action and no right of action were not ruled on by the trial court. Therefore, these exceptions are not properly before us.
[3] As noted, we will not consider the merit of the exceptions since the trial judge has not yet ruled on it.
[4] A copy of the memorandum is not found in the record lodged with this court.