CARTER, C.J.
I ¡/This appeal involves numerous requests/complaints filed with the Louisiana Patients’ Compensation Fund Oversight Board (the PCF) raising issues of negligent care and failure to evacuate at several hospitals and a nursing home in the wake of Hurricane Katrina.[1] In response to each medical review panel request involved in this case, the PCF notified the complainants that the allegations con *969 tained in their individual requests/complaints were not within the scope of the Louisiana Medical Malpractice Act (LMMA), and therefore, the PCF refused to initiate the medical review panel process. In some instances, the PCF intervened in lawsuits that had been filed, all alleging similar damages at various medical facilities during Hurricane Katrina and its immediate aftermath. In each of the interventions, the PCF aligned itself with the claimants against the health care providers who were seeking judicial decisions (by means of dilatory exceptions raising the objection of prematurity) that the allegations constituted medical malpractice as defined by the LMMA, thereby requiring the medical review panel process to be initiated before litigation.
The PCF appeals from a trial court judgment granting several petitions for mandamus, ordering the PCF to discharge its statutory duties pursuant to LSA-R.S. 40:1299.47 A(3). For the reasons assigned below, we affirm the trial court judgment.
1 ^PROCEDURAL BACKGROUND
Plaintiff, Brenda Berthelot, filed a petition in the Nineteenth Judicial District Court requesting that a writ of mandamus be issued to the PCF directing the PCF to perform its statutory ministerial duties under the LMMA by accepting plaintiffs medical review panel request. Specifically, plaintiff requested that the PCF be ordered to initiate the medical review panel process for her claim/complaint against Buffman, Inc., d/b/a St. Rita’s Nursing Home, surrounding the drowning death of her mother during the aftermath of Hurricane Katrina in August 2005. Plaintiff also requested that a declaratory judgment be issued declaring that the PCF had no legal power or authority to take a position regarding whether a medical review panel request contains allegations that present a medical malpractice claim within the scope of the LMMA. Several intervenors (Tenet HealthSystem Memorial Medical Centér, Inc.; Meadowerest Hospital, L.L.C.; Tenet Mid-City Medical, L.L.C.; Pendleton Methodist Hospital, L.L.C., hereafter referred to as “Pendleton”; Chalmette Médical Center, Inc.; and LifeCare Hospitals of New Orleans, L.L.C.)- filed similar petitions asking for mandamus and declaratory relief, as well as injunctive relief in the claims and lawsuits where either the PCF had made, or sought to make, a determination that the Katrina-related allegations did not constitute medical malpractice.
A hearing was held on October 11, 2006, limited to the mandamus actions and the request for preliminary injunctive relief. The parties reserved their rights to later pursue declaratory and permanent injunc-tive relief. After the hearing, the trial court granted all of the petitions for |4mandamus, ordered the PCF to discharge its statutory duties pursuant to the LMMA, and denied the preliminary -in-junctive relief.
The PCF appealed, arguing that the trial court erred in ordering it to comply with the LMMA because the PCF had initially determined that the claims did not constitute medical malpractice and the trial court had not overruled that determination. The PCF’s main contention on appeal is that the LMMA only applies to medical malpractice claims and the PCF has jurisprudential authority and implied statutory authority to make initial administrative determinations as to whether a medical review panel request contains allegations of medical malpractice under the LMMA sufficient for the PCF to comply with its statutory duties regarding medical review panels. Plaintiff and intervenors counter that the PCF is a creature of statute, and as such it has only those rights and responsibilities granted to it by *970 statute. They argue that the PCF does not have any authority to determine whether a claim is properly considered a medical malpractice claim as defined by the LMMA. Rather, the PCF’s duties are merely ministerial and clerical in nature, and the PCF is attempting to usurp the role of the judiciary by determining whether a claim falls under the LMMA. Thus, plaintiff and intervenors maintain that the PCF’s refusal to adhere to its statutory duties warranted the mandamus relief ordered by the trial court. For the following reasons, we find that the trial court’s order of mandamus was correct in this instance because the PCF has no statutory or jurisprudential authority to make legal determinations as to whether a claim falls within the scope of the LMMA.
| ¡ANALYSIS
The PCF relies on the recent supreme court decision, LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008 (La.9/5/07), 966 So.2d 519, for jurisprudential support of its determination that allegations of failure to. properly evacuate in the wake of Hurricane Katrina do not constitute medical malpractice, and therefore, the medical review panel process was not warranted.[2] Further, the PCF maintains that because the LMMA only applies to medical malpractice claims, it has implied statutory authority to make initial administrative determinations regarding the status of the claims before the medical review panel process is initiated, relying on O’Brien v. Rizvi, 04-2252 (La.4/12/05), 898 So.2d 360 and Bennett v. Krupkin, 01-0209 (La.10/16/01), 798 So.2d 940.
At the outset, we note our disagreement with the PCF’s interpretation of the O’Brien and Bennett cases. That line of jurisprudence merely allows the PCF the limited right to intervene in a lawsuit when there has been a settlement or judgment or on the narrow question of the qualification of a health care provider.[3] Hanks v. Seale, 04-1485 (La.6/17/05), 904 So.2d 662, 668-669; O’Brien, 898 So.2d at 364. Contrary to the PCF’s assertions, there is no jurisprudence holding that the PCF has the authority, implied or actual, to make a determination as to whether a claim constitutes medical ^malpractice under the LMMA. This is a res nova issue. However, we are guided by the holding in Hanks, 904 So.2d at 669, where the supreme court found that the Legislature has not chosen to expressly allow the PCF to intervene and appeal a trial court’s judgment of liability, thereby declining to interpret the LMMA to impliedly give that authority to the PCF. Therefore, while the PCF may intervene and appeal the issues of excess damages, qualifications of health care providers, and constitutionality of laws related to medical malpractice, it may not appeal the issue of a health care provider’s liabili *971 ty. See LSA-R.S. 40:1299.44 D(2)(b)(xn); Hanks, 904 So.2d at 669.
We have carefully reviewed the LaCoste decision for guidance as well. In LaCoste, the plaintiff filed a civil action against Pen-dleton, a hospital, for a Katrina-related failure to evacuate/negligent care claim. Pendleton filed a dilatory exception raising the objection of prematurity on the basis that the plaintiffs claim sounded in medical malpractice, thus falling within the parameters of the LMMA, which required review by a medical review panel before commencement of litigation. The trial court denied Pendleton’s exception, concluding that the plaintiffs allegations did not invoke coverage of the LMMA. Meanwhile, the PCF notified the parties that the allegations in plaintiffs request for a medical review panel and petition were not within the scope of medical malpractice as defined in the LMMA. The PCF subsequently filed a petition of intervention to align itself with the plaintiff in opposition to the hospital’s prematurity exception. Pendleton then applied to the court of appeal (fourth circuit) for supervisory writs from the trial court’s denial of its exception. The court of appeal concluded that the plaintiffs allegations were medical in nature and fell Rwithin the purview of the LMMA. Thereafter, the supreme court reversed and reinstated the trial court’s denial of Pendleton’s exception, holding that the Katrina-related death claim in that particular case did not sound in medical malpractice (applying the six factors set forth in Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, 315-316).
Plaintiffs alleged medical malpractice claim in the case before us, as well as some of the other claims outlined in the interve-nors’ petitions, present in a completely different procedural posture than LaCoste, because the request for a medical review panel with the PCF was filed without first commencing litigation against the health care provider in the trial court. Thus, when the PCF made its initial determination that the claim did not sound in medical malpractice and notified the parties of its decision, the only remedy was to file a mandamus and declaratory action against the PCF since the LMMA does not provide any procedure for claimants to seek review of PCF actions. On the other hand, some of the claims in the interve-nors’ petitions were presented in the same manner as in LaCoste, where the claimant first filed a lawsuit, the health care provider filed an exception raising the objection of prematurity, and the PCF intervened in the lawsuit to align itself against the health care provider by arguing that the claim was not medical malpractice.
Unfortunately, the supreme court’s decision in LaCoste did not discuss the PCF’s authority to determine that a claim was not medical malpractice and thereby refuse to process a request for a medical review panel. Likewise, the LaCoste opinion did not discuss the PCF’s ability to intervene in a lawsuit in order to align itself with the plaintiff against the defendant health care provider on the question of whether the claim | ^constituted medical malpractice. Thus, we believe that the LaCoste decision essentially has -no impact on the narrow issue presently before us.[4] However, in a footnote at the end of the LaCoste opinion, the supreme court noted something pertinent to our decision:
[Wjhether the case is one in medical malpractice or negligence will ulti *972 mately be decided at trial by the trier of fact. Today we are concerned only with whether the factual allegations contained in the petition as amended assert claims that fall within the purview of the LMMA and therefore must first be presented to a medical review panel under the procedures of the LMMA. That a fact-finder with more evidence before it may ultimately conclude that the defendant’s conduct was medical malpractice does not control our review of the instant exception of prematurity, which is, as we have explained, limited to the factual allegations in the amended pleadings. (Emphasis added.)
LaCoste, 07-0008, 966 So.2d at 529, n. 2.
We find that the supreme court’s statement in footnote 2 supports the order of mandamus in the case before us. It is the trier of fact that ultimately decides whether a claim sounds in medical malpractice, not the PCF.
The LMMA governs private health care providers. LSA-R.S. 40:1299.41 et seq. Proceedings before a medical review panel are governed by LSA-R.S. 40:1299.47, which provides in pertinent part (with emphasis added):
A. (I )(a) All malpractice claims against health care providers covered by this Part, ... shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
* * *
(3) It shall be the duty of the board within fifteen days of the receipt of the claim by the board to:
ls(a) Confirm to the claimant by certified mail, return receipt requested, that the filing has been officially received and whether or not the named defendant or defendants have qualified under this Part.
(b) In the confirmation to the claimant ... notify the claimant of the amount of the filing fee due and the time frame within which such fee is due to the board, and that upon failure to comply with the provisions [regarding the filing . fee], the request for review of a malpractice claim is invalid and without effect and that the request shall not suspend the time within which suit must be instituted
(c) Notify all named defendants by certified mail, return receipt requested, whether or not qualified under the provisions of this Part, that a filing has been made against them and request made for the formation of a medical review panel; and forward a copy of the proposed complaint to each named defendant at his last and usual place of residence or his office.
* * *
(4) The board shall notify the claimant and all named defendants of any of the following information:
(a) The date of receipt of the filing fee.
(b) That no filing fee was due because the claimant timely provided the affidavit set forth in ... this Section.
(c) That the claimant has timely complied with the provisions of ... this Section.
(d) That the required filing fee was not timely paid pursuant to ... this Section.
*973 B. (I )(a)(i) No action against a health care provider covered by this Part, or his insurer may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.
|inA close examination of the statutory language reveals that the quoted statute, which outlines the PCF’s affirmative and mandatory duties when it receives a request for a medical review panel, does not give the PCF discretion to determine whether a claim falls within the purview of the LMMA.[5] The LMMA is silent as to any PCF duty regarding panel requests other than: (1) confirming receipt of the claim and the qualifications of the health care providers, (2) giving notice of filing fees within specified time frames, (3) notifying health care providers that a claim has been filed and that a request for the formation of a medical review panel has been made, (4) forwarding a copy of the claim to the health care provider,' and (5) notifying all parties when the required filing fee is received by the PCF and whether the claimant has timely or not timely paid the required filing fee. See Golden v. Patient’s Compensation Fund Oversight Bd., 40,801 (La.App. 2 Cir. 3/8/06), 924 So.2d 459, 463, writ denied. 06-0837 (La.6/2/06), 929 So.2d 1261. That is all that the PCF is authorized (or required) to do; no other statutory directive or authority to act is imposed on the PCF in this particular factual scenario. Id.
■Accordingly, the' PCF’s duties under LSA-R.S. 40:1299.47 A are not adjudicative in nature. Bosarge v. Louisiana Patient’s Compensation Fund, 06-1354 (La. App. 1 Cir. 5/4/07), 960 So.2d 1063, 1067. Rather, the PCF’s mandatory duty to act when it receives a request to invoke a medical review panel is clerical or ministerial in nature and is designed to facilitate the medical review process. Therefore, we find that mandamus was Inappropriate in this case.[6] See Bosarge, 960 So.2d at 1067; Estate of Nicks v. Patient’s Compensation Fund Oversight Bd., 05-1624 (La.App. 1 Cir. 6/21/06), 939 So.2d 391, 396; Golden, 924 So.2d at 463; In re Medical. Review Panel of Pierson, 02-1598 (La.App. 1 Cir. 5/9/03), 845 So.2d 1275, 1276, writ denied. 03-1559 (La.10/10/03), 855 So.2d 324. Because LSA-R.S. 40:1299.47 A is silent as to the PCF’s authority to determine whether a claim constitutes medical malpractice as defined by the LMMA,[7] the PCF lacks adjudicatory authority in a medical review panel proceeding. See Bosarge, 960 So.2d at 1067.
It is. well settled that since the LMMA’s limitations on the liability of qualified health care providers constitute special legislation in derogation of the general rights available to tort victims, its provisions must be strictly construed. Estate of Nicks, 939 So.2d at 396; Pierson, *974 845 So.2d at 1276. The PCF is a creature of the Legislature designed only to satisfy settlements and/or judgments against health care providers in excess of $100,000.00 up to the statutory maximum. See LSA-R.S. 40:1299.42; Hanks, 904 So.2d at 666. The PCF can have no greater status than given it by the Legislature. Boyd v. St. Paul Fire & Marine Ins. Co., 99-1820 (La.App. 3 Cir. 12/20/00), 775 So.2d 649, 656, writ denied, 01-0220 (La.3/23/01), 788 So.2d 430. Jurisprudence routinely recognizes that the rights and | ^obligations of the PCF are limited to those expressly proscribed in the LMMA.
We find that the PCF exceeded its statutory authority when it made legal/adjudicative determinations that the claims at issue were not medical malpractice claims. In doing so, the PCF assumed an adversarial position prematurely. We reiterate that the PCF has no economic exposure in these cases unless a settlement or judgment is involved. See Hanks, 904 So.2d at 668; Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676, 680 (La.1985); and Williams v. Kushner, 449 So.2d 455, 458 (La.1984). While the PCF has statutory authority under LSA-R.S. 40:1299.44 A(5)(b) to defend, protect, and manage the fund, that duty does not involve making legal determinations regarding whether claims sound in negligence or medical malpractice.
The legislature clearly did not grant the PCF the right to decline to accept a request for a medical review panel based upon its unilateral determination that the claim did not meet the definition of medical malpractice under the LMMA. Likewise, it is not the PCF’s place to assert that a claim does not fall within the scope of the medical malpractice act. It is the claimant’s choice whether to file the claim as a medical malpractice action requesting the medical review panel process or to file a lawsuit as a negligence action. Similarly, it is the healthcare provider’s choice in a lawsuit to raise the issue that the claim sounds - in medical malpractice and must first be presented to a medical review panel before litigation is commenced. The adversarial parties in the panel proceedings are the claimant and the qualified health care provider, not the PCF. See Hanks, 904 So.2d at 667; Golden, 924 So.2d at 463-464. The PCF is simply not an | ^interested party in these matters until there has been a settlement or judgment or for the limited purpose of litigating the qualification of a health care provider or the constitutionality of a law related to medical malpractice. Hanks, 904 So.2d at 668-669. The interpretation of the LMMA is purely a function of the judiciary, and the judiciary alone will determine whether claims fall within the scope of the LMMA unless the Legislature deems it appropriate to authorize some other entity to make that determination.
CONCLUSION
The PCF has overstepped its legislative authority and has not carried out its mandatory clerical and ministerial duties that are clearly set forth in the LMMA. Therefore, the trial court properly issued the mandamus order in this case. We hereby affirm the trial court judgment.[8] The Louisiana Patients’ Compensation Fund Oversight Board (the PCF) is hereby assessed all costs of this appeal in the amount of $1,358.00.
AFFIRMED.

. The PCF is a legislatively created entity that administers a fund holding private monies in trust to compensate victims of medical malpractice and to protect qualified health care provider members who may be liable for damages caused by their malpractice. See LSA-R.S. 40:1299.44.

. We note with interest that the LaCoste matter was one of the many cases cited in Pendle-ton’s petition of intervention in the case sub judice, where the PCF had failed or was expected to fail to perform its statutorily-imposed duty and the PCF intervened in the lawsuit to oppose the fund’s coverage under the LMMA. The trial court’s judgment in the instant case specifically mentions the LaCoste case (among many) when ordering the PCF to discharge its statutory duties. However, the supreme court's recent decision in LaCoste, when final, will render moot the trial court’s mandamus order as it pertains to LaCoste. That result is consistent with our reasoning in this opinion because the judiciary, not the PCF, made the final determination as to whether the LaCoste claim constituted medical malpractice within the meaning of the LMMA.

. The PCF has been statutorily charged with the duty to determine whether health care providers are qualified under the LMMA. See LSA-R.S. 40:1299.47 A(3)(a).

. LaCoste would only be at issue if we were reviewing the ultimate decision of whether these claims constituted medical malpractice. Contrary to the PCF’s assertions, this issue was not before the trial court and it is not the question presented in this appeal. The sole issue for us to decide is whether the mandamus was proper in this instance.

. The word "shall” in a statute indicates a mandatory duty. LSA-R.S. 1:3; LSA-C.C.P. art. 5053; Golden v. Patient's Compensation Fund Oversight Bd., 40,801 (La.App. 2 Cir. 3/8/06), 924 So.2d 459, 462, writ denied, 06-0837 (La.6/2/06), 929 So.2d 1261.

. A writ of mandamus is a writ directing, inter alia, a public officer to perform a ministerial duty required by law. LSA-C.C.P. arts. 3861, 3863. The prescribed duty must be purely ministerial; mandamus will not lie to compel performance of an act that contains any element of discretion, however slight. Golden, 924 So.2d at 462. The proper function of the writ of mandamus is to compel the doing of a specific thing; it must indicate the precise thing to be done. Id. Nothing can be inquired into but the question of duty on the face of the statute and the ministerial character of the duty the public officer is charged to perform. Estate of Nicks v. Patient’s Compensation Fund Oversight Bd., 05-1624 (La.App. 1 Cir. 6/21/06), 939 So.2d 391, 396.

.The LMMA defines "malpractice” at LSA-R.S. 40:1299.41 A(8).

. As noted infra at footnote 2, the supreme court’s ruling in the LaCoste decision, once final, renders that portion of the trial court’s judgment granting mandamus relief in the LaCoste matter moot.