McClendon, j.
|2Glenda DeBram appeals a judgment that sustained an exception raising the objection of prescription and dismissed her medical malpractice claims against Dr. George T. Keshelava and his insurer, Louisiana Medical Mutual Insurance Company. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Ms. DeBram was admitted to St. Tammany Parish Hospital Emergency Room on November 21, 2008, by her attending physician, Dr. Keshelava, with complaints of painful urination, fever, and cough. Ms. DeBram’s discharge summary indicates that she was treated with IV antibiotics for an E. coli urinary tract infection prior to her discharge from the hospital on December 12, 2008. During the course of her treatment, Ms. DeBram “developed fluid volume overload with some components of congestive heart failure,” and was treated with diuretics, to which she responded well. According to the December 1, 2008 consultation notes from Dr. Leonardo Ore-jarena, “[f]rom the cardiac standpoint, [Ms. DeBram] may have been fluid overloaded in the setting of aortic regurgitation that is moderate.” Ms. DeBram was stable at the time of her discharge from the hospital. On the day of her discharge, December 12, 2008, Ms. DeBram executed a patient authorization for release of medical records. The form is marked “Pd. by cash 12-16-08” on the bottom right hand corner.
On October 15, 2009, pursuant to LSA-R.S. 40:1299.47 A(2)(a), Ms. DeBram filed a request for a medical review panel with the Patient’s Compensation Fund (PCF), naming St. Tammany Parish Hospital and Dr. Keshelava as defendants. Ms. De-Bram alleged that defendants’ actions fell below the standard of care owed to her in the following ways: (1) failure to use reasonable care and diligence while treating and caring for her; (2) failure to adequately monitor her during her care; (3) delay in addressing her fluid overload; (4) administration of medication that contributed *832 to fluid overload after being advised that her problems may be the result of fluid overload; and (5) all other standards of care that a medical care provider in similar circumstances would have followed in using reasonable care, diligence, and best judgment. Subsequently, on January 29, 2010, Ms. DeBram filed the same request for a medical preview panel with the Division of Administration, the proper agency as set forth in LSA-R.S. 40:1299.47 A(2)(a). Her request was acknowledged by the Division of Administration on February 4, 2010, and the dates of the alleged malpractice were noted as “11/21/2008-12/2/2008.”
On September 7, 2010, Ms. DeBram filed an amended request for medical review panel with the Division of Administration, citing dates of alleged malpractice as “11/21/2008-10/20/2009.” In her amended request, Ms. DeBram recounted three visits to St. Tammany Parish Hospital following her initial treatment there in November and December 2008. Ms. DeBram described reporting to the emergency room all three times with almost the exact same symptoms she had during her prior stay at the hospital, only to be discharged each time without a diagnosis. Finally, Ms. DeBram was seen on October 29, 2009, at Ochsner Hospital, again with the same symptoms. However, this time she was diagnosed as suffering from sepsis.
On March 16, 2010, Dr. Keshelava filed a petition to institute discovery pursuant to LSA-R.S. 40:1299.47, et seq. Dr. Keshelava subsequently filed a peremptory exception raising the objection of prescription. Dr. Keshelava argued that Ms. DeBram’s initial filing with the PCF on October 15, 2009, was incorrect pursuant to LSA-R.S. 40:1299.47 A(2)(a) and did not interrupt or suspend prescription. Dr. Keshelava further alleged that Ms. DeBram’s complaint was prescribed on its face as it was filed on January 29, 2010, more than one year following her discharge from the hospital stay during which she claims he breached the standard of care. Thus, Dr. Keshelava maintained, the burden of proof on the exception shifted to Ms. DeBram to prove that her claim had not prescribed.
Following a hearing on September 16, 2010, the trial court sustained the exception. The trial court found that the October 15, 2009 complaint filed with the PCF was without legal effect and did not serve as a basis to interrupt or suspend prescription. The court further found that Ms. DeBram “did not prove any other lawful basis which would serve to interrupt prescription or to otherwise make the complaint filed January 29, 2010 timely.” The trial court’s original judgment was signed on October 14, 2010. However, following a show cause order by this court concerning the | flack of appropriate decretal language, the trial court signed an amended judgment on September 8, 2011, adding language that dismissed Ms. DeBram’s claims against Dr. Keshelava and his insurer, Louisiana Medical Mutual Insurance Company, and declaring that the October 14, 2010 judgment was final in accordance with LSA-C.C.P. art. 1915. This appeal by Ms. DeBram followed.
On appeal, Ms. DeBram assigns the following specifications of error:
1. The [trial court] erred in finding that the evidence introduced at trial supported a finding that appellant’s PCF Complaint was prescribed.
2. The [trial court] erred by placing the burden of proving the Complaint was timely filed on appellant rather than requiring the defendant/movant to prove the claim was prescribed.
3. The [trial court] erred in their statutory interpretation of [LSA-] R.S. 40:1299.47, by finding the statute does *833 not require the [PCF] to inform potential claimants that their claim is properly/improperly filed and to forward otherwise properly filed claims to the correct administrative agency.
LAW AND DISCUSSION

The PCF’s Duties Pursuant to LSA-R.S. 4.0:129947

On appeal, Ms. DeBram contends that the trial court erred in finding that LSA-R.S. 40:1299.47 does not require the PCF to notify claimants when their claims have not been officially received. Ms. DeBram urges this court to follow In re Elliott, 06-1440, pp. 12-18 (La.App. 3 Cir. 4/9/08), 980 So.2d 881, 889, writ denied; 08-1008 (La.8/29/08), 989 So.2d 102, wherein, based on the unique facts of that case, the third circuit found the PCF was required to alert the claimant, in writing by certified mail, that her complaint had not been “officially” accepted by it for processing. In response, Dr. Keshelava argues this case is controlled by the clear and unambiguous language of LSA-R.S. 40:1299.47 and this court’s holding in Berthelot v. Patients’ Compensation Fund Oversight Bd., 07-0112, p. 10 (La.App. 1 Cir. 11/2/07), 977 So.2d 967, 973, writ denied, 07-2328 (La.2/1/08), 976 So.2d 720. We agree with Dr. Keshelava on this issue and find the facts of Elliott easily distinguishable from the facts herein.
In Elliott, the plaintiff sent three different letters to the PCF regarding a malpractice complaint against a dentist who had treated her. Included in one of the | gletters was a check in the amount of $100.00, made payable to the PCF, which represented “payment for the convening of the medical review panel.” Elliott, 06-1440 at p. 2, 980 So.2d at 882. After having received no response from the PCF concerning this matter and following a chance meeting, with Cheryl Jackson, the PCF medical malpractice compliance director, during which Ms. Jackson indicated she would investigate the matter, counsel for plaintiff subsequently decided to forward the formal complaint and request for a medical review panel directly to the Division of Administration. Counsel for plaintiff then sent another letter to Ms. Jackson inquiring as to why his complaint had never been filed or sent back to him, even though his check had been processed by the PCF. Elliott, 06-1440 at pp. 3-4, 980 So.2d at 883.
With regard to the PCF’s policy concerning improperly filed complaints, the Elliott court summarized Ms. Jackson’s testimony as follows:
However, Ms. Jackson testified the PCF has changed its policy -with regard to improperly filed complaints. Now, the custom of the PCF is to make a “courtesy call” to the claimant’s attorney. Ms. Jackson testified: “When we get a letter that is sent to the wrong, filed incorrectly, normally we will give a courtesy call to the party who filed it and let them know that you have filed incorrectly.” Although the PCF will sometimes make a courtesy call, Ms. Jackson testified that the PCF is under no statutory obligation to do anything with an improperly filed complaint. She stated Ms. Elliott’s complaint, although received by the PCF, “didn’t mean anything. We could have torn that piece of paper up for what it was worth because it was filed incorrectly. All claims have to be filed with the Division.” She testified further:
When we get something that is filed incorrectly, it is basically out of courtesy because there is nothing in our office rules wise or statutory wise that says, you need to sent [sic] this back, you need to tear it up. It doesn’t say *834 anything. So what we do as a courtesy, we will make a phone call.
[[Image here]]
Q: Okay. When you receive those nothing happens? You just throw them in the dead file?
A: We make a phone call.
Q: And that is it?
A: Yeah. We don’t have to do anything. But we do make a phone call.
Elliott, 06-1440 at pp. 10-11, 980 So.2d at 888, This testimony notwithstanding, the Elliott court concluded that by taking custody of the filing fee, Ms. Jackson led counsel | nfor plaintiff to believe the claim was properly filed and all fees due had been paid. The court further noted it was reasonable for plaintiffs counsel to “assume his next critical deadline would involve the appointment of an attorney chairman.” Elliott, 06-1440 at p. 12, 980 So.2d at 889.
In the instant case, there is no such testimony from either side regarding communication between counsel for Ms. De-Bram and any PCF representatives. All we have is the initial October 15, 2009 request for a medical review panel that was sent directly to the PCF. This request was received by the PCF on October 27, 2009, as evidenced by the green return receipt card in the record. The next communication regarding same is the January 29, 2010 letter from Ms. DeBram indicating that because the original request for a medical review panel had been sent to the PCF in error, the request was being refiled via facsimile transmission with the Division of Administration. On February 4, 2010, the PCF acknowledged official receipt of the January 29, 2010 request for a medical review panel and notified Ms. De-Bram of the required filing fee to continue with the proceedings. Ms. DeBram’s $200.00 filing fee was timely received by the PCF on February 15, 2010.
Proceedings before a medical review panel are governed by LSA-R.S. 40:1299.47, which provides, in pertinent part, as follows:
A. (l)(a) All malpractice claims against health care providers covered by this Part, ... shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
[[Image here]]
(c) A claimant shall have forty-five days from the mailing date of the confirmation of receipt of the request for review in accordance with Subparagraph (3)(a) of this Subsection to pay to the board a filing fee in the amount of one hundred dollars per named defendant qualified under this Part.
(d) Such filing fee may be waived only upon receipt of one of the following:
(1) An affidavit of a physician holding a valid and unrestricted license to practice his specialty in the state of his residence certifying that adequate medical records have been obtained and reviewed and that the allegations of malpractice against each defendant health care provider named in the claim constitute a claim of a breach of the applicable standard of care as to each named defendant health care provider.
17(ii) An in forma pauperis ruling issued in accordance with Louisiana Code of Civil Procedure Article 5181 et seq. by a district court in a venue in which the malpractice claim could properly be brought upon the conclusion of the medical review panel process.
[[Image here]]
(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted.... Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the *835 division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration.
(b) The request for review of a malpractice claim under this Section shall be deemed filed on the date of receipt of the request stamped and certified by the division of administration or on the date of mailing of the request if mailed to the division of administration by certified or registered mail only upon timely compliance with the provisions of Subpara-graph (l)(c) or (d) of this Subsection. Upon receipt of any request, the division of administration shall forward a copy of the request to the board within five days of receipt.
[[Image here]]
(3) It shall be the duty of the board within fifteen days of the receipt of the claim by the board to:
(a) Confirm to the claimant by certified mail, return receipt requested, that the filing has been officially received and whether or not the named defendant or defendants have qualified under this Part.
(b) In the confirmation to the claimant ... notify the claimant of the amount of the filing fee due and the time frame within which such fee is due to the board, and that upon failure to comply with the provisions [regarding the filing fee], the request for review of a malpractice claim is invalid and without effect and that the request shall not suspend the time within which suit must be instituted....
(c) Notify all named defendants by certified mail, return receipt requested, whether or not qualified under the provisions of this Part, that a filing has been made against them and request made for the formation of a medical review panel; and forward a copy of the proposed complaint to each named defendant at his last and usual place of residence or his office.
(4) The board shall notify the claimant and all named defendants by certified mail, return receipt requested, of any of the following information:
(a) The date of receipt of the filing fee.
(b) That no filing was due because the claimant timely provided the affidavit set forth in Item (l)(d)(i) of this Subsection.
(c) That the claimant has timely complied with the provisions of Item (l)(d)(ii) of this Subsection.
|s(d) That the required filing fee was not timely paid pursuant to Subpara-graph (l)(c) of this Subsection.
Under LSA-C.C. art. 9, “[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” According to clear and express language of LSA-R.S. 40:1299.47, all requests for review of a medical malpractice claim must be filed with the Division of Administration, and filing with any agency or entity other than the Division of Administration does not suspend or interrupt prescription. LSA-R.S. 40:1299.47 A(2)(a). Moreover, LSA-R.S. 40:1299.47 A(2)(b) mandates that a request for review of a medical malpractice claim shall be deemed filed on the date of receipt of the request stamped and certified by the Division of Administration.
As this court in Berthelot noted,
[Louisiana Revised Statutes 40:1299.47] is silent as to any PCF duty regarding panel requests other than: (1) confirm *836 ing receipt of the claim and the qualifications of the health care providers, (2) giving notice of filing fees within specified time frames, (8) notifying health care providers that a claim has been filed and that a request for the formation of a medical review panel has been made, (4) forwarding a copy of the claim to the health care provider, and (5) notifying all parties when the required filing fee is received by the PCF and whether the claimant has timely or not timely paid the required filing fee. That is all that the PCF is authorized (or required) to do; no other statutory directive or authority to act is imposed on the PCF in this particular factual scenario. (Citations omitted.)
Berthelot, 07-0112 at p. 10, 977 So.2d at 973. The holding in Berthelot is controlling herein. The PCF was under no statutory duty to notify Ms. DeBram that her October 15, 2009 complaint was improperly filed. Furthermore, the trial court was correct in its finding that the October 15, 2009 complaint filed with the PCF was without legal effect and did not serve to interrupt or suspend prescription.

Prescription and the Burden of Proof

Prescription statutes are strictly construed against prescription and in favor of maintaining the cause of action. Babineaux v. State ex rel. Dept. of Transp. and Development, 04-2649, p 4 (La.App. 1 Cir. 12/22/05), 927 So.2d 1121, 1124. However, prescription statutes are intended to protect defendants against stale claims and the lack of notification of a formal claim within the prescriptive period. In re Brewer, 05-0666, p. 4 (La.App. 1 Cir. 5/5/06), 934 So.2d 823, 826, writ denied, 06-1290 (La.9/15/06), 936 So.2d 1278,
The prescriptive period for a medical malpractice claim is contained in LSA-R.S. 9:5628 A, which provides, in pertinent part, as follows:
Ño action for damages for injury or death against any physician ... [or] ... hospital ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
This statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely, one year from the date of the alleged act or one year from the date of discovery, with a three year limitation from the date of the alleged act. Louisiana Revised Statutes 9:5628 corresponds with the basic one year prescriptive period for delictual actions provided in LSA-C.C. art. 3492, but it additionally embodies the discovery rule delineated as the fourth category of the jurisprudential doctrine of contra non valentem (“within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect”), with the single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect. See Campo v. Correa, 01-2707, p. 9 (La.6/21/02), 828 So.2d 502, 509.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Campo, 01-2707 at p. 7, 828 So.2d at 508. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id. The plaintiffs petition cannot be con *837 sidered prescribed on its face if the plaintiffs pleadings make a prima facie showing that it was filed “within one year from the date of discovery” and “within a period of three years from the date of the alleged act, omission or neglect.” Campo, 01-2707 at p. 10, 828 So.2d at 509. Specifically, the plaintiff must “allege facts with particularity which indicate that the injury and its causal relationship to the alleged misconduct were not apparent or Imdiscoverable until within the year before the suit was filed” in order to avoid the shifting of the burden of proof to her. Campo, 01-2707 at p. 10 n. 9, 828 So.2d at 509 n. 9.
In this matter, neither of Ms. De-Bram’s complaints contained any allegations whatsoever regarding an inability to discover the alleged acts of malpractice against Dr. Keshelava. No facts were alleged that showed that Ms. DeBram was unaware of any malpractice by Dr. Keshe-lava. Thus, plaintiff failed to allege any facts with particularity that indicated that the injury and its causal relationship to the alleged misconduct against Dr. Keshelava were not apparent or discoverable until within the year the suit was filed. See Campo, 01-2707 at p. 10 n. 9, 828 So.2d at 509 n. 9. Accordingly, this case is factually distinguishable from Campo, and, on the face of the pleadings, the “one year from the date of discovery” period is inapplicable herein. Ms. DeBram’s original request for a medical review panel complaint was filed on January 29, 2010. It alleged acts of malpractice against Dr. Keshelava- during her initial admission at St. Tammany Parish Hospital from November 21, 2008 through December 12, 2008. The amended complaint contained no further allegations against Dr. Keshelava. Accordingly, prescription was evident on the face of the pleadings, and the burden shifted to Ms. DeBram to show that the action against Dr. Keshelava was not prescribed.
On appeal, Ms. DeBram argues that the trial court erred in shifting the burden to her because of her September 7, 2010 supplemental and amending complaint, which she alleges relates back to the original complaint and encompasses continuing acts of malpractice committed by the defendants ending on October 20, 2009, when the final act of malpractice occurred. We disagree.
Again, a review of both complaints shows allegations against Dr. Keshelava only from November 21, 2008 through December 2, 2008, during Ms. DeBram’s initial admission to St. Tammany Parish Hospital. The initial complaint refers to the initial admission, and the amending complaint contains no allegations regarding any additional treatment by Dr. Keshela-va. Thus, the only acts of malpractice alleged against Dr. Keshelava in either complaint were all with regard to Ms. De-Bram’s initial hospitalization in November and December 2008. “A continuing tort is occasioned by unlawful acts, Innot the continuation of the ill effects of an original, wrongful act.” Marin v. Exxon Mobil Corp., 09-2868, p. 26 (La.10/19/10), 48 So.3d 234, 253; Crump v. Sabine River Authority, 98-2326, p. 9 (La.6/29/99), 737 So.2d 720, 728. The inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts. Hogg v. Chevron USA, Inc., 09-2632, p. 16 (La.7/6/10) 45 So.3d 991, 1003. We do not find that the amended complaint alleges facts sufficient to constitute a continuing tort against Dr. Keshelava. Therefore, Ms. DeBram, as the exceptor, had the burden of proof at the trial of the peremptory exception.
On the trial of the prescription exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections *838 pleaded, when the grounds thereof do not appear from the petition. LSA-C.C.P. art. 931. A trial court’s findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review. Marin, 09-2868 at p. 11, 48 So.3d at 244; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, 617 So.2d at 882-83.
At the hearing on the exception, Dr. Keshelava introduced into evidence a copy of discovery requests and responses thereto, the discharge summary of December 12, 2008, a consultation report relative to Ms. DeBram, the amended request for a medical review panel, and her records request from St. Tammany Parish Hospital dated December 12, 2008, the date of discharge. Ms. DeBram introduced a copy of the amended complaint and a proof of fax filing showing receipt of the December 12, 2008 discharge summary on October 5, 2009. Ms. DeBram argued that she received incomplete records from the hospital, and it was not until she received the discharge summary on October 5, 2009, that there was any indication that something was wrong.
In granting the exception, the trial court found that Ms. DeBram’s claim against Dr. Keshelava was prescribed. The trial could have reasonably found the evidence 112presented insufficient to establish continuing acts of malpractice by Dr. Keshela-va, since Dr. Keshelava did not evaluate or treat Ms. DeBram following her December 12, 2008 discharge. The trial court could have also reasonably determined that Ms. DeBram had adequate notice to prompt further inquiry into her condition when she was discharged from St. Tammany Parish Hospital on December 12, 2008, as she requested a copy of her medical records upon her discharge. Because a reasonable factual basis exists for the trial court’s findings, we cannot say that the trial court was manifestly erroneous or clearly wrong.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court’s September 8, 2011 judgment. Costs of this appeal are assessed to Glenda DeBram.
AFFIRMED.
PETTIGREW, J., concurs in part, dissents in part, and assigns reasons.
WELCH, J. concurs in part and dissents in part for reasons assigned by Judge PETTIGREW.